**Stacia Lynn KERNS**

v.

**UNITED STATES of America.**

**Civil Action No. CCB–07–1006.**

United States District Court,
D. Maryland.

Feb. 7, 2008.

Paul D. Bekman, Michael Patrick Smith, Salsbury Clements Bekman Marder and Adkins LLC, Baltimore, MD, for Stacia Lynn Kerns.

Ariana Wright Arnold, Office of the United States Attorney, Baltimore, MD, for United States of America.

## MEMORANDUM

CATHERINE C. BLAKE, District Judge.

Now pending before the court is a motion to dismiss filed by defendant United States of America against plaintiff Stacia Lynn Kerns. Pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1346(b)(1), Kerns is suing the United States under a theory of vicarious liability for the allegedly negligent acts of Debra Scott that resulted in a traffic accident and the tragic death of Kerns' husband, Gregory Kerns, Jr. Arguing that Scott was not acting within the scope of her employment at the time of the accident, the United States seeks dismissal of the case for lack of subject matter jurisdiction. The issues in this motion have been fully briefed and no hearing is necessary. For the reasons stated below, the defendant's motion will be granted.

## BACKGROUND

On June 24, 2005, at approximately 9:30 p.m., Debra Scott was involved in a deadly traffic accident with Gregory Kerns, Jr. just outside of the Fort Meade army base in Anne Arundel County, Maryland. Scott had earlier arrived at BWI airport at approximately 1:06 p.m. pursuant to military travel orders authorizing her travel from McKees Rock, Pennsylvania to Annapolis, Maryland to attend a three-day conference beginning on June 25, 2005. As a contract employee with the 99th Regional Readiness Command, Scott was tasked to provide administrative support for the Family Readiness Program conference at the Radisson Hotel in Annapolis. Scott's travel orders appeared to require that she travel to Maryland via commercial aviation and that she was not authorized to use a rental car. (Def.'s Mem. at Ex. 2, Travel Orders.) The travel orders were silent, however, on how Scott was to proceed from the airport to the conference center in Annapolis.

At 1:34 p.m., Scott rented an automobile from the Alamo car rental center at BWI airport under her own name and with her own credit card.[1] (*See id.* at Ex. 7, Alamo

---

1. Although Scott subsequently submitted a reimbursement request for various expenses related to her trip, she never requested government reimbursement for the rental car. (Def.'s Mem. at Exs. 5, 6.)

Contract.) It is not clear precisely what Scott did immediately after receiving her rental car, but two separate affidavits from Scott's supervisors note that Scott had stated an intention to visit friends in the Fort Meade area. (*See id.* at Ex. 3 ¶ 5, Ex. 4 ¶ 5.) Although neither of Scott's supervisors knew specifically what she was doing at the time of the accident, one of her supervisors, Barbara Wilson, averred that "the conference ... had not yet begun, and she [Scott] was not performing any duties related to the conference or Army business at the time of the accident." (*Id.* at Ex. 3 ¶ 4.)

Noting that she could check into the Annapolis hotel after 4:00 p.m. on June 24, Scott states in her affidavit that she went shopping at the Fort Meade Post Exchange ("PX") immediately prior to the accident. (Def.'s Reply Mem. at Ex. 1 ¶ 5, Scott Aff.) According to the government, Fort Meade is located approximately 16.9 miles from the Annapolis conference center. (Def.'s Mem. at 7.) It was upon leaving Fort Meade that Scott was involved in the traffic accident that ultimately resulted in the death of Gregory Kerns, Jr., an active duty member of the U.S. Navy. (Def.'s Reply Mem. at Ex. 1 ¶ 6, Scott Aff.) Scott suggests that had she "not been on invitational government travel orders and provided with an airline ticket by the U.S. Government to fly to BWI to be a briefer at a Key Volunteer and Staff Training meeting in Annapolis, Maryland, for benefit of the U.S. Army, [she] would not have been at FT Meade at the time of the collision, and this collision would not have occurred." (*Id.* at Ex. 1 ¶ 7.)

## ANALYSIS

When FTCA subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff bears the burden of persuasion and must establish an unequivocal waiver of immunity with respect to her claim. *See Williams v. United States,*

50 F.3d 299, 304 (4th Cir.1995). There are two ways in which to present a 12(b)(1) motion for lack of subject matter jurisdiction. First, a defendant may claim that a complaint "simply fails to allege facts upon which subject matter jurisdiction can be based." *Adams v. Bain,* 697 F.2d 1213, 1219 (4th Cir.1982). In that case, all the facts alleged in the complaint are assumed to be true and the plaintiff is essentially given the same procedural protection as she would have under a Rule 12(b)(6) motion for failure to state a claim upon which relief may be granted. *Id.* Second, a defendant may claim that the jurisdictional allegations of the complaint are sufficient, but are not true. *Id.* In that event, the court may consider evidence beyond the pleadings in satisfying itself of its authority to hear the case without converting the proceeding to one for summary judgment. *Williams,* 50 F.3d at 304 (citing *Mortensen v. First Federal Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3rd Cir.1977)). The court must then weigh all the evidence to determine if there is jurisdiction. *Adams,* 697 F.2d at 1219.

This case involves the second kind of motion in that the United States is challenging Kerns' apparent belief that Scott was acting within the scope of her employment at the time of the accident. The evidence beyond the allegations found in the complaint, however, clearly establishes that Scott was not acting within the scope of her employment, thereby precluding the viability of a FTCA claim against the United States.

The FTCA allows a plaintiff to sue the United States for damages resulting from the torts of federal government employees acting within the scope of their employment to the extent that a private party would be liable for those acts under state law. 28 U.S.C. § 1346(b). Thus, the FTCA serves as a limited waiver of the

sovereign immunity of the United States, allowing the government to be held liable for the negligent acts or omissions of federal agents or employees. *Williams,* 50 F.3d at 305. It does not, however, waive the government's sovereign immunity for injuries resulting from the tortious conduct of an employee when an employer would not be vicariously liable under state law.

■■■ "The doctrine of *respondeat superior,* in Maryland, allows an employer to be held vicariously liable for the tortious conduct of its employee when that employee was acting within the scope of the employment relationship." *Oaks v. Connors,* 339 Md. 24, 660 A.2d 423, 426 (1995) (citing *Dhanraj v. Potomac Elec. Power Co.,* 305 Md. 623, 506 A.2d 224 (1986)). An employee's tortious acts are within the scope of his employment if "they were in furtherance of the employer's business and were 'authorized' by the employer." *Sawyer v. Humphries,* 322 Md. 247, 587 A.2d 467, 470 (1991). This general rule has been narrowed with respect to the use of automobiles, where:

> on account of the extensive use of the motor vehicle with its accompanying dangers, the courts have realized that a strict application of the doctrine of *respondeat superior* in the modern commercial world would result in great injustice … It is now held by the great weight of authority that a master will not be held responsible for negligent operation of a servant's automobile, even though engaged at the time in furthering the master's business unless the master expressly or impliedly consents to the use of the automobile, and … had the right to control the servant in its operation, or else the use of the automobile was of such vital importance in furthering the master's business that his control over it might reasonably be inferred.

*Oaks,* 660 A.2d at 426 (quoting *Dhanraj,* 506 A.2d at 226). Accordingly, "[t]he 'right to control' concept is key to a *respondeat superior* analysis in the motor vehicle context." *Id.* at 426–27. Finally, because "[d]riving to and from work is generally not considered to be within the scope of a servant's employment because getting to work is the employee's own responsibility and ordinarily does not involve advancing the employer's interests … 'absent special circumstances, an employer will not be vicariously liable for the negligent conduct of his employee occurring while the employee is traveling to or from work.' " *Id.* at 427 (quoting *Dhanraj,* 506 A.2d at 226).

Here, Kerns is unable to offer or suggest that she could procure any evidence demonstrating that Scott was furthering her employer's interests or under her employer's control when she rented a car and drove to Fort Meade, located more than fifteen miles from the Annapolis conference center, the afternoon before her work conference was set to begin. First, Scott's affidavit clearly states that the accident occurred soon after she finished shopping at the Fort Meade PX. (Def.'s Reply Mem. at Ex. 1 ¶¶ 5, 6.) Scott gives no indication that she was shopping for or on behalf of her employer. Indeed, Scott's supervisor avers that Scott "was not performing any duties related to the conference or Army business at the time of the accident." (Def.'s Mem. at Ex. 3 ¶ 4.) To the contrary, Scott had told her two supervisors that she planned to rent a car at BWI and visit friends at Fort Meade. (*See* Def.'s Mem. at Ex. 3 ¶ 5, Ex. 4 ¶ 5.) Second, although Scott's travel orders do not specify how the employees were to get from BWI to Annapolis, they apparently do not authorize a rental car. (*Id.* at Ex. 2, Travel Orders.) The fact that Scott did not request or receive reimbursement for the rental car only confirms this point. (*Id.* at

Exs. 5, 6.) The evidence in this case thus indicates that Scott took advantage of the personal time she was afforded the day before her work-related conference was to begin by shopping at Fort Meade and possibly visiting friends. Moreover, these facts preclude Kerns from demonstrating that Scott was acting within the scope of her employment at the time of the accident, because she was neither acting in furtherance of her employer's interests nor under her employer's control.[2]

██ In her affidavit, Scott suggests that had she not been invited by the government to travel to Annapolis to work at the conference, she "would not have been at FT Meade at the time of the collision, and this collision would not have occurred." (Def.'s Reply Mem. at Ex. 1, Scott Aff.) If this statement is meant to imply that the United States should therefore be held vicariously liable for Scott's alleged negligence, then this logic is far too tenuous and would be inconsistent with prevailing case law. In *Dhanraj*, PEPCO requested that its employee, Joseph Sandy, attend a six-week training course at a training station different from his regular work place. 506 A.2d at 225. Even though Sandy was commuting on a daily basis in his car to a special facility and being paid a travel allowance, the Maryland Court of Appeals found that he was "no more within the scope of his employment than was his travel to and from his usual job site...." *Id.* at 226.

The court ultimately concluded that because PEPCO did not specify how Sandy was to travel to the training facility and did not have a "right of control" over

Sandy in that regard, the generally recognized rule preventing an employer from being held vicariously liable for an employee's negligent act while commuting to and from work applied. *Id.* at 227–28. *See also Henderson v. AT & T Info. Sys., Inc.,* 78 Md.App. 126, 552 A.2d 935, 940–41 (1989) (finding that even where a company employee was reimbursed by the mile and given explicit parameters concerning driving distance and time, employer was not vicariously liable for an accident that occurred when the employee rear-ended another vehicle during a 320 mile drive to a one-year graduate program paid for by the employer).

The situation here weighs even more heavily in favor of concluding that Scott was not acting within the scope of her employment at the time of the accident. Unlike *Dhanraj*, Scott was not driving directly to a special work facility, in this case the Annapolis conference center, but rather was concluding an afternoon that appears to have been completely personal in nature. Scott traveled to Fort Meade to shop at the PX and possibly visit friends. Moreover, the time of the accident was 9:30 p.m., well after regular business hours. Finally, Scott never requested or received government reimbursement for her travel by rental car. Therefore, any attempt to assign vicarious liability to the government based on a " 'but for' the Annapolis work conference the accident would not have occurred" argument is tenuous, at best, and inconsistent with Maryland case law.

██ Kerns further argues that numerous exceptions have been carved out of the

---

2. Even if Scott were somehow acting in furtherance of her employer's interests at the time of the accident, there is no evidence that would indicate her employer's control over her actions. Scott rented an automobile under her own name, drove to Fort Meade, and concluded shopping after regular business hours at approximately 9:30 p.m. This, without more, falls well short of the showing required to demonstrate that an employee was acting within the scope of her employment under Maryland's *respondeat superior* doctrine.

general automobile vicarious liability rules in Maryland, specifically citing the "course of employment" doctrine, *Montgomery County v. Wade*, 345 Md. 1, 690 A.2d 990, 995 (1997), the "special mission or errand" doctrine, *Dir. of Finance v. Alford*, 270 Md. 355, 311 A.2d 412 (1973), and the "dual purpose" doctrine, *Fairchild Space Co. v. Baroffio*, 77 Md.App. 494, 551 A.2d 135, 137 (1989). All of the cases cited by Kerns, however, are cases that discuss whether an employee was acting within the scope of her employment in the context of receiving workers' compensation benefits. Maryland courts have stated that an "analysis of scope of employment for workers' compensation purposes is not apposite to the analysis of scope of employment for establishing liability under *respondeat superior.*" *Henderson*, 552 A.2d at 941; *see also Dhanraj*, 506 A.2d at 227–28. In order to distinguish between *respondeat superior* liability and workers' compensation eligibility, it has been noted that:

> To obtain compensation benefits all that an employee need do is establish that his injury was caused by an activity related to his job. However, *respondeat superior* mandates that the employee be either under the control of the employer at the time of the injury or that he could have been. Whereas qualifying for workers' compensation benefits requires only that the injury occur out of and in the course of employment, recovery under the doctrine of *respondeat superior* necessitates that the employee be acting in the scope

of his employment, a much narrower test.

*Henderson*, 552 A.2d at 941 (quoting *Dinkins v. Farley*, 106 Misc.2d 593, 434 N.Y.S.2d 325, 329 (N.Y.Sup.Ct.1980)). Thus, Kerns' attempt to apply "principles of Workers' Compensation to a determination of whether a particular activity was within the scope of employment for purposes of establishing vicarious liability of" the United States appears to be futile.[3] *Sheets v. Chepko*, 83 Md.App. 44, 573 A.2d 413, 418 (1990); *see also Buckingham v. United States*, 124 F.Supp.2d 943, 944 (D.Md.2000) (finding that because Maryland adheres to traditional principles of *respondeat superior*, the exceptions to the coming and going rule found in workers' compensation cases are inapplicable to a vicarious liability analysis).

 Finally, Kerns argues that granting a Rule 12(b)(1) motion is inappropriate at this time, because "[t]he Fourth Circuit has recognized that absent a developed record, a trial court should allow plaintiffs the opportunity to discover facts to support jurisdictional allegations." *EEOC v. Alford*, 142 F.R.D. 283, 286 (E.D.Va.1992) (internal quotation omitted). Supporting her need for further discovery, Kerns' counsel filed an affidavit similar to one filed under Rule 56(f). (Pl.'s Opp. Mem. at Ex. 1, Bekman Aff.) The affidavit requests discovery regarding: Scott's actions at the time of the collision; her itinerary; the purpose of her journey; her reasons for obtaining a rental car; the nature of

---

**3.** To the extent that workers' compensation exceptions do apply to a *respondeat superior* analysis, Kerns appears to be unable to show that the facts of this case could fall within the exceptions' contours. The evidence in this case, including Scott's affidavit, fails to raise even an inference that the rental car was necessary for fulfilling work-related duties, required for a special mission or errand, or related to a dual work-related purpose. In-

stead, Scott appears to have rented a car in order to take advantage of the personal time she was afforded the day before her work conference was to begin by shopping at Fort Meade and possibly visiting friends in the area. Consequently, Kerns is unable to present the kind of special circumstances that the Maryland Court of Appeals would accept as bringing this case outside the ordinary *respondeat superior* rules.

Scott's employment and business travel; the policies and procedures governing Scott's employment and travel; her responsibilities during out of town business travel; and policies and procedures concerning renting an automobile. (*Id.*)

 Although Kerns is correct to note that in certain situations it may be inappropriate to dismiss a case at the jurisdictional stage, "[t]hese are cases where the jurisdictional facts are intertwined with the facts that are central to the merits of the dispute." *Schalk v. Associated Anesthesiology Practice*, 316 F.Supp.2d 244, 248 (D.Md.2004) (citing *Adams*, 697 F.2d at 1219). In those situations, "the proper course of action is to find that jurisdiction exists and resolve the entire factual dispute by a proceeding on the merits." *Id.* at 248–49. Here, the jurisdictional facts are not so entangled with the merits of Scott's alleged underlying negligence as to fall in line with *Alford, Schalk,* and *Adams*. Those were Title VII, ADA, and § 1983 cases, respectively, where the jurisdictional facts were "intertwined with the facts upon which the ultimate issues on the merits must be resolved." *See Adams*, 697 F.2d at 1220. FTCA jurisdictional issues arising under *respondeat superior* theories, however, are normally quite distinct from the underlying merits of the case and thus would "not usually present a serious problem" for a court deciding a 12(b)(1) motion. *See id.* at 1219. Thus, unlike the cases cited by Kerns, where granting dismissal based on subject matter jurisdiction was inappropriate, courts regularly grant 12(b)(1) dismissal on FTCA claims asserting vicarious liability. ·*See Williams*, 50 F.3d at 305; *Hodge v. United States*, 443 F.Supp.2d 795, 800 (E.D.Va.2006); *Lumpkins v.·United States*, 187 F.Supp.2d 535, 538–39 (D.Md.2002); *Buckingham*, 124 F.Supp.2d at 944.

Moreover, despite Kerns' efforts to expand the factual issues the court must resolve before determining whether it has subject matter jurisdiction over this FTCA claim, the record before the court is complete and plainly demonstrates that Scott was not acting within the scope of her employment at the time of the accident. In addition to the affidavits of Scott's two supervisors, Scott's own affidavit establishes that she was not acting in furtherance of her employer or operating under the control of her employer. These affidavits thus preclude a viable jurisdictional argument. As Scott acknowledges, she concluded what appears to have been personal shopping at approximately 9:30 p.m. on June 24 and her work-conference was not set to begin until the following day. Scott had every opportunity in her affidavit to offer some indication that she was acting on behalf of her employer, but she did not do so. Her silence speaks loudly. Furthermore, although the Scott affidavit was only offered for the first time in the defendant's reply brief, Kerns has not sought to file a surreply to explain how Scott's remarks might show that Scott was acting within the scope of her employment at the time of the accident. Therefore, because the court finds that the record is sufficiently complete and Scott was not acting within the scope of her employment at the time of the accident, the United States is entitled to dismissal for lack of subject matter jurisdiction.

A separate order follows.

### *ORDER*

For the reasons stated in the accompanying Memorandum, it is hereby **ORDERED** that:

1. the defendant's motion to dismiss (docket entry no. 8) is **GRANTED;** and

2. the Clerk shall **CLOSE** this case.