PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

STACIA LYNN KERNS, Individually,
and as Personal Representative of
the Estate of Dennis Gregory
Kerns, Jr., and as mother and next
friend of A.K. and D.K., III,

        *Plaintiff-Appellant,*

        v.

UNITED STATES OF AMERICA,

        *Defendant-Appellee.*

No. 08-1287

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Catherine C. Blake, District Judge.
(1:07-cv-01006-CCB)

Argued: September 22, 2009

Decided: October 29, 2009

Before MOTZ and KING, Circuit Judges,
and Mark S. DAVIS, United States District Judge for the
Eastern District of Virginia, sitting by designation.

Vacated and remanded by published opinion. Judge King
wrote the opinion, in which Judge Motz and Judge Davis
joined.

## COUNSEL

**ARGUED**: Paul David Bekman, SALSBURY, CLEMENTS, BEKMAN, MARDER & ADKINS, Baltimore, Maryland, for Appellant. Ariana Wright Arnold, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee. **ON BRIEF**: Emily C. Malarkey, SALSBURY, CLEMENTS, BEKMAN, MARDER & ADKINS, Baltimore, Maryland, for Appellant. Rod J. Rosenstein, United States Attorney, Baltimore, Maryland for Appellee.

---

## OPINION

KING, Circuit Judge:

In April 2007, Stacia Kerns instituted this lawsuit against the United States under the Federal Tort Claims Act (the "FTCA"), 28 U.S.C. §§ 1346(b), 2671–2680, based on the alleged negligence of Government employee Debra Scott. In her complaint, Kerns alleged that Scott, acting within the scope of her employment, had negligently caused an automobile accident in Maryland that resulted in the death of Kerns's husband, Dennis Gregory Kerns, Jr. (the "decedent"). On February 7, 2008, the district court dismissed the complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. *See Kerns v. United States*, 534 F. Supp. 2d 633 (D. Md. 2008) (the "Opinion"). By way of this appeal, Kerns challenges the dismissal of her FTCA claim. As explained below, we vacate and remand.

I.

A.

At the time of the accident, Scott was a contract employee of the Army Reserve's 99th Regional Readiness Command,

working for the office of the Family Readiness Program Director in Coraopolis, Pennsylvania.[1] On May 20, 2005, Scott was ordered to provide a briefing during a three-day volunteer training conference concerning aid and assistance to military families. The conference was to be held at a Radisson Hotel in Annapolis, Maryland, beginning at 8:00 a.m. on Saturday, June 25, 2005. That Friday, June 24, Scott drove her personal car to the Pittsburgh airport and flew to Baltimore-Washington International Thurgood Marshall Airport ("BWI") at the Government's expense. At approximately 1:06 p.m., Scott landed at BWI and rented a vehicle at the airport. Using her personal credit card, she paid a "Government Weekend" rate for a three-day rental. J.A. 43.[2] Shortly after 1:30 p.m., she departed BWI; the Radisson Hotel's check-in time was 4:00 p.m.

Scott first drove from BWI to the nearby Army Post at Fort Meade, Maryland, to shop at the Fort Meade PX.[3] At approximately 9:30 p.m., Scott left Fort Meade and headed eastbound on Annapolis Road/Maryland Route 175 toward Annapolis. While making a left-hand turn, Scott struck the decedent, who was riding a motorcycle westbound on the same road. The decedent was thrown to the highway and seriously injured; he was promptly transported to a hospital trauma unit, but later died. It is undisputed, for our purposes, that Scott was at fault. Scott returned to Pennsylvania the next day without completing the conference.

---

[1] The facts spelled out herein are drawn from the Complaint and various exhibits filed in connection with the Government's motion to dismiss. For purposes of its motion, the Government assumed arguendo that Scott was an "[e]mployee of the government" under 28 U.S.C. § 2671.

[2] Citations herein to "J.A. __" refer to the contents of the Joint Appendix filed by the parties in this appeal.

[3] Scott's husband was on active duty with the Army Reserve, entitling her to utilize facilities, such as the Fort Meade PX, that are located on military installations.

B.

On April 19, 2007, Kerns, as the personal representative of her husband's estate and next friend of her children, filed her complaint in the District of Maryland. On August 2, 2007, the Government moved to dismiss under Rule 12(b)(1), contending that there was no basis for subject matter jurisdiction under the FTCA because Scott was not acting within the scope of her employment with the Government at the time of the accident. Rather, according to the Government, "[t]he evidence [was] clear . . . that [Scott] rented the car on her own to visit personal friends." J.A. 11.

The Government submitted eight exhibits, including two affidavits, in support of its Rule 12(b)(1) motion to dismiss. The exhibits included the following:

- Scott's May 20, 2005 travel orders, which provided that she was to travel between Pennsylvania and Maryland by commercial plane and that "rental car is not authorized." J.A. 32. The orders were silent on how Scott was to proceed from the airport to the hotel in Annapolis.

- Post-conference travel voucher records, dated July 21, 2005, and August 3, 2005, showing that Scott sought and received reimbursement for round-trip vehicle mileage between Coraopolis and the Pittsburgh airport, as well as per diem and other expenses. The records suggest that Scott neither requested nor received reimbursement for the rental car involved in the accident.

- An affidavit from Barbara Wilson, Scott's supervisor at the time of the accident. Wilson attested that she too had travelled to Annapolis, although not with Scott. Wilson stated that she was "not certain what [Scott] was doing at the time of the

accident," but that the conference "had not yet begun, and [Scott] was not performing any duties related to the conference or Army business at the time of the accident." J.A. 35. According to the affidavit, Wilson was informed by Scott, prior to the conference, "that she planned to rent a car and visit friends at Fort Meade during the conference weekend." *Id.*

- An affidavit from Thomas Cannon, a colleague who flew to Baltimore with Scott. Cannon attested that "Scott rented a vehicle when we left BWI Airport, and she told me she was going to use the car to visit some friends in the area that evening." J.A. 37. Like Wilson, however, Cannon was "not certain what [Scott] was doing at the time of the accident." *Id.*

On August 20, 2007, Kerns submitted a memorandum in opposition to the Government's motion to dismiss, requesting the district court to authorize relevant discovery proceedings. Kerns maintained that the record had not been sufficiently developed because the exhibits submitted by the Government failed to "disprove that Ms. Scott was acting within the scope of her employment at the time of the collison," in that the exhibits did "not provide any specific information about what Ms. Scott was doing at [that] time" — including any statement from Scott herself. J.A. 75. Kerns pointed out, for example, that although the Wilson and Cannon affidavits "provide[d] hearsay accounts of conversations these individuals had with Ms. Scott about a possible visit with a friend while in Maryland to attend the conference, both specifically state that [the affiants did] not know what Ms. Scott was doing or where she was going at the time of the collision." *Id.* at 76. Furthermore, Kerns asserted, "[m]erely because Ms. Scott was not reimbursed for her expenses related to the rental car [did] not conclusively establish that Ms. Scott . . . did not use the rental car for some portion of her work-related respon-

sibilities or even that Ms. Scott's duties did not require the rental car." *Id.* at 77. Indeed, the Government "provided no information about how the out-of-town [conference] attendees . . . got to the location of the conference from the airport." *Id.* In these circumstances, Kerns maintained, discovery was necessary to fully develop the record before the district court could properly issue any ruling on the Government's motion to dismiss.

On September 6, 2007, the Government filed its reply memorandum on the Rule 12(b)(1) request. This submission included an August 23, 2007 affidavit from Scott, prepared by the Government in the wake of Kerns's opposition memorandum. Scott attested that "[e]mail instructions regarding travel to the [conference] stated that we could fly into BWI, drive our personal automobiles or take a rental car." J.A. 94. Scott further attested that, on June 24, 2005, while she "was in the Annapolis/FT Meade area on government orders," she "went shopping at the FT Meade PX." *Id.* at 95. According to Scott, if she had not been on government orders to provide a briefing at the conference, she "would not have been at FT Meade at the time of the collision, and this collision would not have occurred." *Id.* The affidavit did not specify whether Scott was shopping at the Fort Meade PX for herself or her employer, and it did not address whether Scott had also been visiting friends in the Fort Meade area.

In its reply memorandum, the Government failed to acknowledge or address the contradiction between the notation in Scott's May 20, 2005 travel orders specifying that "rental car is not authorized," J.A. 32, and Scott's averment that "[e]mail instructions" identified a rental car as a permissible mode of travel, *id.* at 94. Instead, the Government asserted that Kerns could "point to no set of facts that would demonstrate that the United States authorized Ms. Scott to use the rental car to travel to Ft. Meade the evening before the conference in Annapolis was to begin." *Id.* at 89-90. The Government did acknowledge Scott's apparent attempt — by stating

in her affidavit that she would not have been at Fort Meade but for the conference — to establish that she was acting within the scope of her employment at the time of the accident. The Government insisted, however, that "whether Ms. Scott was visiting friends at Fort Meade or shopping at the [PX] prior to the accident, she was performing no duties related to her employment or with her attendance at the conference." *Id.* at 91.[4]

On February 7, 2008, without any discovery having occurred, the district court granted the Rule 12(b)(1) motion to dismiss. In its Opinion, the court concluded that, under Maryland law, Scott was not acting within the scope of her employment with the Government at the time of the tragic accident. *See Kerns*, 534 F. Supp. 2d at 637–38. The court gave two reasons for its conclusion. First, it posited that Scott was running personal errands at the time of the accident. The court observed that "Scott's affidavit clearly states that the accident occurred soon after she finished shopping at the Fort Meade PX," and that "Scott gives no indication that she was shopping for or on behalf of her employer." *Id.* at 637. Second, the court found that Scott had rented the car on her own initiative for use in her personal time. The court noted that the travel orders apparently did not authorize a rental car, as evidenced by "[t]he fact that Scott did not request or receive reimbursement." *Id.* The court thus ruled that it lacked jurisdiction and dismissed the complaint. *Id.* at 640. Kerns filed a timely notice of appeal, and we possess jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

Kerns's primary contention on appeal is that the key juris-

---

[4]Kerns did not respond to the Scott affidavit, apparently because it was not filed until the reply submission of the Government. *See* D. Md. Loc. R. 105(2)(a) ("Unless otherwise ordered by the Court, surreply memoranda are not permitted to be filed.").

dictional issue — whether Scott was acting within the scope of her employment with the Government — is also an issue central to the merits of her FTCA claim. She thus maintains that the district court should have assumed jurisdiction, proceeded to the merits of her FTCA claim, and treated the Government's Rule 12(b)(1) dismissal motion as a Rule 56 request for summary judgment. Kerns further asserts that, had the court applied the appropriate legal principles, it would have denied the motion and authorized discovery on the scope-of-employment issue.[5]

In resolving this appeal, we first ascertain the proper legal framework for resolving a Rule 12(b)(1) motion to dismiss, when the jurisdictional facts are inextricably intertwined with those central to the merits. We then assess whether, in the context of this FTCA claim, the scope-of-employment issue is an essential aspect of both the jurisdictional question and the merits, rendering dismissal under Rule 12(b)(1) inappropriate.

### A.

We have heretofore recognized that a defendant may challenge subject matter jurisdiction in one of two ways. *See Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). First, the defendant may contend "that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based." *Id.* When a defendant makes a facial challenge to subject matter jurisdiction, "the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." *Id.* In that situation, the facts alleged in the complaint are taken as true, and the motion must be

---

[5]Kerns also contends that, even if Rule 12(b)(1) was the appropriate tool for resolving this case, the district court erred in denying her request for limited discovery on the scope-of-employment issue. Because dismissal under Rule 12(b)(1) was inappropriate, we need not reach or address this contention.

denied if the complaint alleges sufficient facts to invoke sub-
ject matter jurisdiction.

In the alternative, the defendant can contend — as the Gov-
ernment does here — "that the jurisdictional allegations of the
complaint [are] not true." *Adams*, 697 F.2d at 1219. The
plaintiff in this latter situation is afforded less procedural pro-
tection: If the defendant challenges the factual predicate of
subject matter jurisdiction, "[a] trial court may then go
beyond the allegations of the complaint *and in an evidentiary
hearing* determine if there are facts to support the jurisdic-
tional allegations," without converting the motion to a sum-
mary judgment proceeding. *Id.* (emphasis added). In that
situation, the presumption of truthfulness normally accorded
a complaint's allegations does not apply, and the district court
is entitled to decide disputed issues of fact with respect to
subject matter jurisdiction.

As we explained in *Adams*, vesting a district court with the
discretion to determine whether it possesses jurisdiction gen-
erally presents no problems. *See* 697 F.2d at 1219. But as
Judge Sprouse cautioned in *Adams*, "where the jurisdictional
facts are intertwined with the facts central to the merits of the
dispute," a presumption of truthfulness should attach to the
plaintiff's allegations. *Id.* In that situation, the defendant has
challenged not only the court's jurisdiction but also the exis-
tence of the plaintiff's cause of action. A trial court should
then afford the plaintiff the procedural safeguards — such as
discovery — that would apply were the plaintiff facing a
direct attack on the merits. The Fifth Circuit has aptly
described the underlying rationale for this approach:

> [N]o purpose is served by indirectly arguing the mer-
> its in the context of federal jurisdiction. Judicial
> economy is best promoted when the existence of a
> federal right is directly reached and, where no claim
> is found to exist, the case is dismissed on the merits.
> This refusal to treat indirect attacks on the merits as

Rule 12(b)(1) motions provides, moreover, a greater level of protection to the plaintiff who in truth is facing a challenge to the validity of his claim: the defendant is forced to proceed under Rule 12(b)(6) . . . or Rule 56 . . . both of which place greater restrictions on the district court's discretion.

*Williamson v. Tucker*, 645 F.2d 404, 415 (5th Cir. 1981). Thus, when the jurisdictional facts and the facts central to a tort claim are inextricably intertwined, the trial court should ordinarily assume jurisdiction and proceed to the intertwined merits issues. *See United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 348 (4th Cir. 2009). As the Supreme Court has explained with respect to such situations, a trial court should dismiss under Rule 12(b)(1) only when the jurisdictional allegations are "clearly . . . immaterial, made solely for the purpose of obtaining jurisdiction or where such a claim is wholly unsubstantial and frivolous." *Bell v. Hood*, 327 U.S. 678, 682 (1946).[6]

In short, when a defendant asserts that the complaint fails to allege sufficient facts to support subject matter jurisdiction, the trial court must apply a standard patterned on Rule 12(b)(6) and assume the truthfulness of the facts alleged. On the other hand, when the defendant challenges the veracity of the facts underpinning subject matter jurisdiction, the trial court may go beyond the complaint, conduct evidentiary proceedings, and resolve the disputed jurisdictional facts. And when the jurisdictional facts are inextricably intertwined with those central to the merits, the court should resolve the rele-

---

[6]If a district court does not dismiss under Rule 12(b)(1), it is entitled to treat a Rule 12(b)(1) motion as a direct attack on the merits under Rule 56(c). *See, e.g.*, *Rivanna Trawlers Unltd. v. Thompson Trawlers, Inc.*, 840 F.2d 236, 239 (4th Cir. 1988) (explaining that when contested basis for jurisdiction is element of claim, motion to dismiss should be converted to motion for summary judgment). Here, for example, the district court was entitled to treat the motion to dismiss as a request for summary judgment under Rule 56(c).

vant factual disputes only after appropriate discovery, unless the jurisdictional allegations are clearly immaterial or wholly unsubstantial and frivolous. *See Bell*, 327 U.S. at 682.

In this case, the Government makes the second type of challenge, contending that Kerns's complaint included jurisdictional allegations that are not true. Therefore, we must assess whether the jurisdictional facts are so intertwined with the merits that dismissal under Rule 12(b)(1) was inappropriate.

### B.

Absent a statutory waiver, sovereign immunity shields the United States from a civil tort suit. *See United States v. Sherwood*, 312 U.S. 584, 586 (1941). When it enacted the FTCA in 1946, Congress "waived the sovereign immunity of the United States for certain torts committed by federal employees." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). The FTCA grants jurisdiction to the district courts only with respect to a "certain category of claims." *Id.* at 477. In order for a claim to fall within that limited category, it must be made

> "[1] against the United States, [2] for money damages, . . . [3] for injury or loss of property, or personal injury or death [4] caused by the negligent or wrongful act or omission of any employee of the Government [5] while acting within the scope of his office or employment, [6] under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

*Id.* (quoting 28 U.S.C. § 1346(b)) (alterations in original). In other words, to establish subject matter jurisdiction, an FTCA plaintiff bears the burden of establishing, inter alia, that the Government employee was acting within the scope of his or her employment at the time of the accident. The scope-of-

employment issue is thus, on its face, a jurisdictional one —
if Scott was acting outside the scope of her employment with
the Government, the district court lacks jurisdiction over
Kerns's FTCA claim.

Meanwhile, the underlying cause of action in an FTCA
claim is derived from the applicable state law. An action
under the FTCA may only be maintained if the Government
would be liable as an individual under the law of the state
where the negligent act occurred. *See* 28 U.S.C. § 1346(b)(1).
In Maryland, an employer is liable for the tortious acts of its
employee under the doctrine of respondeat superior, but only
if the employee's negligent acts were committed within the
scope of employment. *See Oaks v. Connors*, 660 A.2d 423,
426 (Md. 1995). Thus, the scope-of-employment issue is also
an element of Kerns's FTCA claim — if Scott was acting out-
side the scope of her employment with the Government,
Kerns cannot satisfy an element of her negligence claim
against the United States.

Notwithstanding the overlap between the jurisdictional ele-
ments of the FTCA and the requirements of a claim of
respondeat superior liability under Maryland law, the Opinion
concluded that the "FTCA jurisdictional issues arising under
respondeat superior theories . . . are normally quite distinct
from the underlying merits of the case and thus would 'not
usually present a serious problem' for a court deciding a
12(b)(1) motion." *Kerns*, 534 F. Supp. 2d at 640 (quoting
*Adams*, 697 F.2d at 1219). According to the Opinion, "courts
regularly grant 12(b)(1) dismissal on FTCA claims asserting
vicarious liability." *Id.*

The district court's conclusion finds some support in at
least two of our sister courts of appeals. The Third Circuit, for
example, recently recognized that a district court may dismiss
an FTCA claim under Rule 12(b)(1), even when the facts
underlying the claim are intertwined with the jurisdictional
facts. *See CNA v. United States*, 535 F.3d 132, 140 (3d Cir.

2008). Although it acknowledged that the issue of "[w]hether a Government employee was acting within the scope of his employment plausibly could be addressed as one of jurisdiction or one of the merits of a claim," the Third Circuit nevertheless concluded that "treating the scope-of-employment issue as jurisdictional in the FTCA context is the better course." *Id.* The court observed that an FTCA plaintiff, who bears the burden of persuasion if subject matter jurisdiction is challenged, does not need any additional protection provided by Rules 12(b)(6) and 56(c), because a district court "requir[es] less of a factual showing" from the plaintiff when jurisdiction is intertwined with the merits. *Id.* at 145. According to the Third Circuit, this less-stringent standard sufficiently ensures that trial courts "do not prematurely grant Rule 12(b)(1) motions to dismiss." *Id.* The Second Circuit has reached a similar conclusion in an FTCA case, observing that the scope-of-employment issue is best resolved under Rule 12(b)(1). *See Hamm v. United States*, 483 F.3d 135, 137 (2d Cir. 2007).

Other courts of appeals disagree with the approach advanced by the Second and Third Circuits. The Fifth Circuit, on facts similar to those here, adhered to what it called the "general rule" and recognized that "a jurisdictional attack intertwined with the merits of an FTCA claim should be treated like any other intertwined attack, thereby making resolution of the jurisdictional issue on a 12(b)(1) motion improper." *Montez v. Dep't of Navy*, 392 F.3d 147, 150 (5th Cir. 2004). The Eleventh Circuit has reached a similar conclusion. *See Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (vacating dismissal of FTCA claim under Rule 12(b)(1) because "[t]he pertinent inquiry will resolve both the question of subject matter jurisdiction and a necessary element of the tort claim"); *see also Augustine v. United States*, 704 F.2d 1074, 1079 (9th Cir. 1983) ("Because the jurisdictional issue [when plaintiff's cause of action accrued for purposes of the FTCA] is dependent upon resolution of factual issues going to the merits, it was incumbent upon the district court to apply

summary judgment standards in deciding whether to grant or deny the government's motion."). In our view, this more-stringent rule better ensures that an FTCA plaintiff is provided with the appropriate procedural safeguards, requiring the scope-of-employment issue to be addressed as an element of the FTCA claim.

Having carefully assessed the issue, we are constrained to agree with the more-stringent approach: Because the scope-of-employment issue is determinative of both jurisdiction and the underlying merits of an FTCA claim, dismissal under Rule 12(b)(1) is inappropriate unless the jurisdictional allegations are clearly immaterial or wholly unsubstantial and frivolous. *See Bell*, 327 U.S. at 682. As an initial matter, we agree that an FTCA plaintiff facing an indirect attack on the merits — by way of a Rule 12(b)(1) motion — deserves greater procedural protection than that afforded by a typical Rule 12(b)(1) motion. *See, e.g.*, *CNA*, 535 F.3d at 144 (acknowledging concern that Rule 12(b)(1) provides few procedural safeguards when jurisdictional issue is intertwined with merits). Indeed, we are unable to identify any valid reason for distinguishing this type of FTCA claim — with intertwined factual questions on jurisdictional and merits issues — from other tort claims with intertwined factual issues. Thus, the general rule arising from our *Adams* and *Vuyyuru* line of precedent is applicable: A district court should assume jurisdiction and assess the merits of the claim when the relevant facts — for jurisdictional and merits purposes — are inextricably intertwined. *See Vuyyuru*, 555 F.3d at 348; *Adams*, 697 F.2d at 1220.[7]

---

[7]We lack confidence in the efficacy of the less-stringent Rule 12(b)(1) standard espoused by the Third Circuit. *See CNA*, 535 F.3d at 145 (concluding that plaintiffs are adequately protected because district courts require "less of a factual showing than would be required to succeed at trial"). As this proceeding exemplifies, a district court is entitled to dismiss for lack of subject matter jurisdiction at any time. *See* Fed. R. Civ. P. 12(h)(3). It is inconsistent, however, for a trial court to require less proof from the plaintiff, and yet to grant dismissal of the claim prior to at least

Our conclusion that a Rule 12(b)(1) dismissal was inappropriate in this case is not undermined by our decision in *Williams v. United States*, 50 F.3d 299 (4th Cir. 1995), where we approved dismissal of an FTCA claim under Rule 12(b)(1). The disputed issues in *Williams* — whether the alleged employee was an independent contractor and whether the discretionary-function exception applied — were threshold issues wholly unrelated to the basis for liability under the FTCA. For example, whether the Government had managed or supervised the activities of the alleged tortfeasor in *Williams*, thereby rendering the tortfeasor an independent contractor rather than an employee, was not an issue intertwined with the merits of the FTCA claim then being pursued. With the scope-of-employment issue in this case, however, the conduct of Scott herself, rather than her status, is determinative of both jurisdiction and the merits of the FTCA claim.

We are thus satisfied to recognize that, when the scope-of-employment issue is determinative of both jurisdiction and the underlying merits of an FTCA claim, dismissal under Rule 12(b)(1) is inappropriate, unless the jurisdictional allegations are clearly immaterial or wholly unsubstantial and frivolous. *See Bell*, 327 U.S. at 682. In so ruling, however, we acknowledge that Kerns appears to face a daunting task with respect to her FTCA claim, in that Maryland has apparently restricted the circumstances where an employer can be held vicariously liable for its employee's negligent use of an automobile. *See, e.g.*, *Henkelmann v. Metro. Life Ins. Co.*, 26 A.2d 418, 423 (Md. 1942) (discussing requirements for employer to be held vicariously liable in automobile context). As Kerns's lawyer

jurisdictional discovery. *See CNA*, 535 F.3d at 145–46 (upholding dismissal of FTCA claim under Rule 12(b)(1) before plaintiff was accorded opportunity to conduct discovery). At such an early stage in the proceedings, an FTCA plaintiff's jurisdictional allegations on an intertwined issue should generally be sufficient to survive an indirect attack on the merits. Thus, the application of a Rule 12(b)(6) or Rule 56(c) standard is more appropriate.

explained at oral argument, however, discovery could show that, at least for Rule 56 purposes, the Government authorized Scott's rental car and Scott drove to Fort Meade on legitimate Government business, such as purchasing supplies for the Annapolis conference where she was to present a briefing. Because such facts could be sufficient under Maryland law, Kerns should be afforded an opportunity — at minimum — to conduct discovery on the intertwined scope-of-employment issue.

### III.

Pursuant to the foregoing, the judgment is vacated and remand is granted for discovery on the jurisdictional issue, and for such other and further proceedings as may be appropriate.

*VACATED AND REMANDED*