**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 16-6411

GREGORY CARTER,

       Plaintiff - Appellant,

   v.

UNITED STATES OF AMERICA,

       Defendant - Appellee.

Appeal from the United States District Court for the Southern District of West Virginia, at Beckley. Irene C. Berger, District Judge. (5:15-cv-04984)

Argued: March 23, 2017                       Decided: June 20, 2017

Before MOTZ, THACKER, and HARRIS, Circuit Judges.

Vacated and remanded by unpublished opinion. Judge Harris wrote the opinion, in which Judge Motz and Judge Thacker joined.

**ARGUED:** Barr Benyamin, GEORGETOWN UNIVERSITY LAW CENTER, Washington, D.C., for Appellant. Nicolas Y. Riley, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Steven Goldblatt, Director, Erica Hashimoto, Director, Caitlin Callahan, Student Counsel, Appellate Litigation Program, GEORGETOWN UNIVERSITY LAW CENTER, Washington, D.C., for Appellant. Chad A. Readler, Acting Assistant Attorney General, Mark B. Stern, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Carol A.

Casto, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, West Virginia, for Appellee.

––––––––––––

Unpublished opinions are not binding precedent in this circuit.

PAMELA HARRIS, Circuit Judge:

Gregory Carter, a federal inmate, sued the United States under the Federal Tort Claims Act ("FTCA"), alleging that the negligence of prison staff caused him physical injury and emotional distress. The district court granted the government's motion to dismiss for lack of jurisdiction. The FTCA allows for an inmate suit against the United States, the court held, only if the inmate has sustained a physical injury that is more than *de minimis*. And after reviewing Carter's medical records, the court found that Carter had failed to show such an injury here.

We conclude that this jurisdictional analysis errs in two respects. First, the district court applied a statutory provision that governs only claims for emotional injury to Carter's distinct claim for physical injury. And second, the court improperly resolved disputes regarding facts intertwined with the merits of Carter's tort suit instead of presuming the truth of Carter's allegations. Accordingly, we vacate the order of dismissal and remand for further proceedings.

## I.

### A.

Carter was an inmate at Federal Correctional Institution, Beckley ("FCI Beckley"), in West Virginia. When he arrived at FCI Beckley in December of 2013, Carter notified medical staff of two recent injuries, one to his ankle and one to his neck and back. A doctor observed significant bruising and swelling of Carter's right ankle and ordered x-

rays of Carter's ankle, neck and lower back. The x-rays came back negative, apart from a mild degenerative disc disease in the cervical and lumbar spine.

The incidents that give rise to this case began when Carter awoke in the early hours of May 3, 2014, to find his cell flooded with two inches of standing water. Carter asked Correctional Officer R. Lagowski to drain the water by opening his cell door, but Lagowski refused, telling Carter that he would have to wait for the morning shift change. Carter attempted to reach the toilet in his cell with the help of a cane for his ankle, but according to Carter, the cane slipped in the water and caused him to fall, further injuring his ankle and back.

When Carter asked Lagowski for medical attention, Lagowski directed Carter to walk to the supervising lieutenant's office, insisting that he do so even after Carter voiced concerns that his injury would prevent him from walking. As he attempted to stand and walk, Carter alleges, he slipped and fell a second time, hitting his head on a wall locker and injuring his neck.

Along with another correctional officer, Lagowski then assisted Carter into a wheelchair and brought him to the lieutenant's office. Carter claims that once there, he was "ridiculed" and "falsely accused of fabricating his injuries." J.A. 10. As punishment for "insolence" and disobeying Lagowski's order to walk to the lieutenant's office, J.A. 147, Carter received six days in the Special Housing Unit, and lost his email and commissary privileges for ninety days.

Most of these facts are undisputed, though the government does not concede the two falls at the heart of Carter's complaint, asserting that no prison personnel witnessed

4

either purported fall. Most relevant here, however, is the dispute between the parties regarding the cause and extent of any physical injuries Carter suffered in the aftermath of the May 3 flood.

Carter acknowledges that even before his incarceration and the May 3 incident, he had experienced injuries to his ankle, as well as to his back and neck. But he contends that his condition was improving, and in his submissions to the district court, he asserted that by the time of his May 3 falls, his "ankle was on the road to recovery, [and] it was not swollen," and he was "no longer wearing" an orthopedic "boot cast" that had been recommended by a prison doctor. J.A. 156. In support, Carter points to medical records showing that in late January of 2014, the pain level associated with his ankle was at a "6" out of 10 and he was using a crutch and wearing a boot brace, whereas by March 2014, he had turned in his crutches for a cane and experienced pain only at a level of "3."

But as a result of his May 3 falls, Carter alleges, he experienced increased and persistent pain. Throughout May, Carter complained of back and neck pain and tenderness, and in May and July medical staff assessed a neck "sprain and strain." J.A. 76. Carter's ankle was the subject of more sustained attention: By May 28, Carter was rating his ankle pain at level "6," and while x-rays conducted in June came back negative, a July 7 MRI on Carter's ankle revealed tenosynovitis and diffuse soft tissue swelling. Over the next several months, Carter complained repeatedly of continued ankle pain and swelling. By November 2014, he was administered a steroidal injection for pain relief, and in February 2015, an orthopedic surgeon raised the possibility that surgery would be required.

5

The government disputes Carter's allegations, contending that Carter experienced no significant injury as a result of the alleged falls. According to the government, Carter's pre-incarceration ankle condition in fact was not improving prior to the May 3 incident; instead, records from Carter's March 2014 appointment showed that Carter's ankle "remains swollen and painful" and described Carter's condition as "Not Improved/Same." J.A. 65–66. And, the government argues, nothing changed after the alleged falls: A medical assessment of Carter in the immediate aftermath noted "No Significant Findings/No Apparent Distress Other than chronic swelling to right ankle," J.A. 70, and subsequent complaints and examinations all were consistent with Carter's pre-existing condition.

**B.**

Carter filed suit against the United States in federal district court in West Virginia, pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671 *et seq.*, seeking compensatory damages for both physical injury and emotional distress. Carter alleged that staff members at FCI Beckley were negligent under West Virginia law when they failed to drain the water in his cell, delayed medical attention, and ordered him to walk even though he was injured from his first fall. That negligence, Carter asserted, caused him damages including "physical injury, pain and suffering, and emotional distress and harm." J.A. 10.

The government moved to dismiss Carter's FTCA suit for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1). Under § 1346(b)(1) of the FTCA, federal district courts generally have jurisdiction over tort claims against the United

6

States for "injury or loss of property, or personal injury or death" caused by the negligence of a federal government employee, if the claim would give rise to liability in the state where the tort occurred. 28 U.S.C. § 1346(b)(1); *see Durden v. United States*, 736 F.3d 296, 301 (4th Cir. 2013). But the government pointed to a different subsection, § 1346(b)(2), which excepts from the FTCA's grant of jurisdiction an action by a prison inmate "for mental or emotional injury . . . without a prior showing of physical injury[.]" 28 U.S.C. § 1346(b)(2). That subsection, the government argued, requires a showing of a physical injury that is more than *de minimis*. And according to the government, Carter's medical records – attached as exhibits to its motion – demonstrated that Carter's condition was virtually identical before and after his alleged falls, and that the falls could have resulted in no more than a *de minimis* aggravation of his pre-existing injuries.

The motion to dismiss was referred to a magistrate judge, who adopted the government's position and recommended dismissal of Carter's complaint. The magistrate judge recognized that Carter was suing for both physical and emotional injuries. But he applied § 1346(b)(2), which governs inmate actions "for mental or emotional injury," to the entirety of Carter's claim, and agreed with the government that Carter was required to exceed a *de minimis* physical injury threshold under that provision. The magistrate judge then evaluated the factual evidence regarding Carter's allegation that his two falls caused injury to his back and neck, as well as to his ankle. As to the back and neck, the magistrate judge determined, based on his own review of Carter's medical records, that any "aggravation of [Carter's] pre-existing condition" caused by the alleged falls was no more than *de minimis*. J.A. 181. The magistrate judge reached a

7

similar conclusion with respect to Carter's ankle, specifically rejecting Carter's allegation that his ankle had been "on the road to recovery" before the May 3 incident, in part because Carter used a cane both before and after his falls. J.A. 183

Carter objected to the magistrate judge's proposed findings and recommendation, arguing that he had satisfied the FTCA's jurisdictional predicate with a showing "that his injury has overcome the *de minimis* hurdle." J.A. 197. The district court began its analysis by noting a dispute over the import of Carter's medical records, on which the magistrate judge had relied in recommending dismissal, but which Carter alleged indicated "extensive" injuries sufficient to sustain his FTCA claim. J.A. 217. After analyzing the medical evidence, the district court determined that the magistrate judge was correct: The back and neck injuries that Carter alleged resulted from his May 3 falls, the court found, were so insignificant as to be *de minimis*; and Carter's ankle problems were a *de minimis* aggravation of a prior condition rather than a result of the May 3 incident. The district court gave special attention to the February 2015 appointment record showing that Carter "suffers ongoing pain and discomfort in his right foot and ankle, that injections helped him only for a few days, that he has tenderness around the tibialis posterior and medial surface of the right ankle and numbness of his foot," and that the "patient is going to [need] to have possible surgery," but concluded that the record provided insufficient evidence of a "more substantial injury." J.A. 219 (internal quotation marks and citations omitted). Accordingly, the district court overruled Carter's objections and adopted the recommendation of the magistrate judge, dismissing Carter's suit for lack of subject matter jurisdiction.

8

This timely appeal followed.

## II.

### A.

We review *de novo* the district court's grant of a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). *In re KBR, Inc., Burn Pit Litig.*, 744 F.3d 326, 333 (4th Cir. 2014). When a defendant challenges the factual allegations in the complaint that support jurisdiction, we review for clear error the district court's "jurisdictional findings of fact on any issues that are not intertwined with the facts central to the merits of the plaintiff's claims[.]" *U.S. ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 348 (4th Cir. 2009). But when the jurisdictional facts are "inextricably intertwined" with the merits, the district court "should ordinarily assume jurisdiction and proceed to the intertwined merits issues." *Kerns v. United States*, 585 F.3d 187, 193 (4th Cir. 2009).

### B.

The United States typically is immune from suit. The FTCA, however, waives that immunity with respect to "certain torts committed by federal employees." *FDIC v. Meyer*, 510 U.S. 471, 475–76 (1994). Under § 1346(b)(1) of the FTCA, a plaintiff generally may sue the United States in district court to recover for personal injuries caused by the negligence of a federal government employee acting within the scope of his or her employment; if an individual would be held liable under the tort law of the state in which the negligent act occurred, then the federal government may be sued, as well. 28

U.S.C. § 1346(b)(1) (granting jurisdiction on certain "claims against the United States" for "injury or loss of property, or personal injury or death"); *see Durden*, 736 F.3d at 301; *Kerns*, 585 F.3d at 193–94.

In 1996, Congress narrowed this grant of jurisdiction through an amendment to the FTCA, enacted as part of the Prison Litigation Reform Act of 1995 ("PLRA"), Pub. L. No. 104-134, tit. VIII, 110 Stat. 1321 (1996). The PLRA, intended to curb frivolous prisoner litigation in federal court, *see Woodford v. Ngo*, 548 U.S. 81, 84 (2006); *McLean v. United States*, 566 F.3d 391, 397 (4th Cir. 2009), included two provisions targeting inmate suits for "mental or emotional injury." Section 803 of the PLRA, as codified at 42 U.S.C. § 1997e(e), put limits on recovery in inmate civil rights actions for "mental or emotional injury," absent a showing of "physical injury or the commission of a sexual act[.]" 42 U.S.C. § 1997e(e). And directly relevant here, the PLRA added § 1346(b)(2) to the FTCA, precluding inmate tort actions against the United States for "mental or emotional injury . . . without a prior showing of physical injury" or a sexual act. 28 U.S.C. § 1346(b)(2).

On appeal, the parties focus on the legal premise on which the magistrate judge and district court rested their decisions: that § 1346(b)(2)'s reference to "physical injury" incorporates a *de minimis* threshold. The government, pointing to appellate cases construing the same "physical injury" language in the PLRA's limit on civil rights suits by inmates, argues that Congress intended that prisoners be required to show a physical injury that is more than *de minimis*. *See, e.g.*, *Brooks v. Warden*, 800 F.3d 1295, 1307 (11th Cir. 2015) (holding that § 1997e(e) restricts recovery for constitutional violations

10

unless inmate "can demonstrate a (more than *de minimis*) physical injury").* Carter, for his part, contends that the plain language of § 1346(b)(2), which uses "physical injury" without adornment, makes clear that even *de minimis* physical injuries are actionable under the FTCA, and that cases construing § 1997e(e) are distinguishable.

We need not resolve that issue here, because two threshold errors by the district court require us to vacate the dismissal of Carter's complaint and remand for proceedings on the merits. First, although § 1346(b)(2) applies only to suits for "mental or emotional injury," the district court also dismissed Carter's distinct claim for physical injury under that provision. And second, as to the remaining claim for emotional distress, the court prematurely engaged in fact-finding as to the cause and extent of Carter's injuries – matters intertwined with the merits of Carter's suit.

**1.**

As described above – and as specifically noted by the magistrate judge – Carter's complaint seeks damages both for physical injury and for emotional distress. But § 1346(b)(2), on which the magistrate judge and district court relied to dismiss Carter's suit, clearly and by terms, applies only to actions for "mental or emotional injury":

> No person convicted of a felony who is incarcerated . . . may bring a civil action against the United States . . . for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act . . . .

---

* Our own court has not had occasion to consider in a published decision whether § 1997e(e) requires a showing of a physical injury that is more than *de minimis*.

11

28 U.S.C. § 1346(b)(2). Like its companion provision in the PLRA dealing with civil rights claims by inmates, 42 U.S.C. § 1997e(e), § 1346(b)(2) is concerned exclusively with claims of emotional distress; it makes no mention of any jurisdictional limit pertaining to the claims for "physical injury" expressly covered by § 1346(b)(1). Indeed, this point is plain enough that the government conceded it at oral argument, acknowledging that any limits imposed on inmate suits by § 1346(b)(2) would pertain only to actions for emotional distress, and not to actions for physical injury.

Accordingly, the district court erred by applying § 1346(b)(2)'s jurisdictional limitation – whether or not it incorporates a *de minimis* threshold – to the entirety of Carter's FTCA suit, rather than only to Carter's claim for emotional distress. Carter's distinct claim for physical injury is subject not to § 1346(b)(2), but to the standard immunity waiver of § 1346(b)(1), under which he may proceed in federal court so long as the injuries of which he complains would be cognizable under West Virginia tort law. The government, relying exclusively on § 1346(b)(2), has not argued that the extent of Carter's injuries would preclude recovery under state law, and applying the correct jurisdictional provision, we conclude that Carter has established the district court's subject matter jurisdiction over his claim for damages arising from physical injuries.

**2.**

That leaves Carter's remaining claim for emotional distress, to which § 1346(b)(2)'s jurisdictional limit does apply. We agree with Carter that dismissal of this claim on a Rule 12(b)(1) motion was inappropriate, because it rested on jurisdictional fact-finding that went directly to the merits of his suit.

12

To challenge subject matter jurisdiction under Rule 12(b)(1), a defendant may contest the veracity of a complaint's allegations in support of jurisdiction. *See Durden*, 736 F.3d at 300. That is what the government has done here, disputing Carter's allegation that physical injuries of more than a *de minimis* nature resulted from the May 3 incident in his cell. And in that situation, a district court ordinarily is not required to extend to the plaintiff the protections that would attach to a Rule 12(b)(6) motion to dismiss, assuming the truth of the plaintiff's allegations and drawing all reasonable inferences in the plaintiff's favor. Instead, the court is entitled to consider evidence outside the pleadings and "decide disputed issues of fact with respect to subject matter jurisdiction." *Kerns*, 585 F.3d at 192; *see Vuyyuru*, 555 F.3d at 347–48. And that is what the district court did here, reviewing the medical records submitted by the government and finding as a matter of fact that contrary to Carter's allegations, any falls that occurred on May 3 did not cause physical injuries exceeding a *de minimis* threshold.

The problem is that there is an exception to the general rule authorizing jurisdictional fact-finding on a Rule 12(b)(1) motion to dismiss: The rule does not apply to "jurisdictional facts [that] are intertwined with the facts central to the merits" of a dispute. *Vuyyuru*, 555 F.3d at 348 (internal quotation marks and citation omitted). Where the defendant is contesting not only the jurisdictional basis for a suit but also the core of a plaintiff's cause of action, then the plaintiff is entitled to the same "procedural safeguards" that "would apply were the plaintiff facing a direct attack on the merits," *Kerns*, 585 F.3d at 193, including a presumption of the truthfulness of the facts alleged, *Rich v. United States*, 811 F.3d 140, 145 (4th Cir. 2015), and the court should resolve

13

factual disputes only after appropriate discovery or, if necessary, at trial, *id.*; *Kerns*; 585 F.3d at 193; *see Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006) ("If satisfaction of an essential element of a claim for relief is at issue, . . . the jury is the proper trier of contested facts."). In short, unless the relevant allegations are "wholly unsubstantial," the district court should deny a Rule 12(b)(1) motion in order to "assume jurisdiction and proceed to the intertwined merits issues." *Kerns*, 585 F.3d at 193.

We have applied this rule in other FTCA cases, holding that because jurisdictional and merits facts were intertwined, the district court was precluded from deciding factual disputes on a Rule 12(b)(1) motion to dismiss. *See Rich*, 811 F.3d at 146–48; *Kerns*, 585 F.3d at 195–96. The same rule governs here. In arguing against subject matter jurisdiction under FTCA § 1346(b)(2), the government has put at issue the truth of Carter's allegation that significant injuries, as well as the emotional distress connected to those injuries, resulted in substantial part from his two falls, which in turn were caused by the negligence of prison staff. And those factual allegations bear not only on jurisdiction under § 1346(b)(2), but also on the "essential element[s]" of Carter's underlying tort action. *See Arbaugh*, 546 U.S. at 514. The district court's primary ground for dismissal – a factual finding that Carter's post-May 3 symptoms were principally the result of pre-existing conditions rather than Carter's alleged falls – goes directly to the ultimate merits issue of causation. And to the extent the district court relied as well on a determination that Carter's post-May 3 symptoms were not sufficiently severe to cross the *de minimis* threshold, that finding, too, is intertwined with the merits issue of damages.

14

Because the dispute over the cause and severity of Carter's injuries is inextricably intertwined with the merits of Carter's tort action, Carter is entitled to a "presumption of truthfulness" on a motion to dismiss, *Rich*, 811 F.3d at 145, and "the entire factual dispute is appropriately resolved only by a proceeding on the merits," *Vuyyuru*, 555 F.3d at 348 (internal quotation marks and citation omitted). As we have previously observed in the FTCA context, the procedural safeguards afforded by a merits proceeding "do[] not disappear simply because the plaintiff is a prisoner." *Rich*, 811 F.3d at 147. Given the overlap between facts bearing on jurisdiction and those central to the merits, the proper course is for the district court to "assume jurisdiction" in order to take up the merits of Carter's claim for emotional distress. *See Kerns*, 585 F.3d at 195.

### III.

For the foregoing reasons, the judgment of the district court is vacated, and remand is granted for additional proceedings consistent with this opinion.

*VACATED AND REMANDED*