**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────────

**No. 14-7204**

───────────────

JOSHUA RICH,

                  Plaintiff - Appellant,

      v.

UNITED STATES OF AMERICA,

                  Defendant - Appellee.

───────────────

Appeal from the United States District Court for the Northern District of West Virginia, at Martinsburg. Gina M. Groh, District Judge. (3:13-cv-00137-GMG-RWT)

───────────────

Argued: October 27, 2015         Decided: December 29, 2015

───────────────

Before KEENAN, WYNN, and DIAZ, Circuit Judges.

───────────────

Affirmed in part, vacated in part, and remanded by published opinion. Judge Keenan wrote the opinion, in which Judge Wynn and Judge Diaz joined.

───────────────

**ARGUED**: Jay Thornton McCamic, MCCAMIC, SACCO & MCCOID, PLLC, Wheeling, West Virginia, for Appellant. Alan McGonigal, OFFICE OF THE UNITED STATES ATTORNEY, Wheeling, West Virginia, for Appellee. **ON BRIEF**: William J. Ihlenfeld, II, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Wheeling, West Virginia, for Appellee.

───────────────

BARBARA MILANO KEENAN, Circuit Judge:

While serving a fifty-seven year sentence at the United States Penitentiary in Bruceton Mills, West Virginia (USP Hazelton), Joshua Rich was attacked in a recreation area, or "cage," by several other inmates. He was severely beaten and stabbed several times. A nine-inch-long homemade knife was recovered at the scene. Rich suffered serious injuries, including liver laceration, which required numerous invasive surgeries.

Rich sued the United States under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346(b), alleging that prison officials had been negligent in failing to protect him from the attack. The district court granted the government's motion to dismiss for lack of subject matter jurisdiction, concluding that the discretionary function exception to the FTCA applied both to the prison officials' decision not to separate Rich from his attackers, as well as to the manner in which the officials searched other inmates prior to placing them with Rich in the recreation cage.

Upon our review, we affirm the district court's holding that the prison officials' discretionary decision not to separate Rich from his attackers is subject to the discretionary function exception of the FTCA, depriving us of jurisdiction over that claim. However, with regard to Rich's claim that

2

prison officials did not perform the searches properly, we remand for additional discovery because jurisdictional facts are intertwined with the merits of that claim.

I.

In 2008, the United States District Court for the District of Utah sentenced Rich to fifty-seven years' imprisonment for armed bank robbery, in violation of 18 U.S.C. § 2113(a) and (d), and for using and carrying a firearm in relation to a crime of violence, in violation of 18 U.S.C. § 924(c). Rich entered the custody of the Bureau of Prisons (BOP) in September 2008.[1]

According to Rich, he immediately was targeted in prison by a white supremacist group, the "Aryan Brotherhood," for his refusal to follow that group's rules and to participate in the group's criminal schemes. Although transferred frequently to different penitentiaries, Rich contends that he was targeted continually by the Aryan Brotherhood and required separation from the group.[2]

---

[1] Unless otherwise indicated, the facts in Section I are undisputed.

[2] The government disputes Rich's account of his time at the various penitentiaries and the reasons for his separation from other inmates, arguing that Rich's prior Special Housing Unit placements were unrelated to the Aryan Brotherhood. As we explain in Section II.B., this dispute of fact is immaterial to our conclusions.

3

In February 2011, Rich was transferred to USP Hazelton and, on August 5, 2011, five inmates attacked him in a recreation cage within the Special Housing Unit (SHU). The attackers beat Rich and stabbed him repeatedly. A knife measuring about nine inches in length was recovered from the scene.[3] Rich suffered serious injuries and underwent numerous surgeries, including a bronchoscopy for respiratory failure, a laparotomy to repair a laceration to his liver, and open-heart surgery to repair the right atrium of his heart.

Rich sued the United States under the FTCA, alleging one count of negligence asserting that the prison officials had failed to protect him from harm. Rich alleged that the officials should have kept him separated from his attackers, and that the officials failed to screen, "wand," or search the inmates properly prior to placing them in the recreation cage.

The government moved to dismiss Rich's complaint on the basis that the discretionary function exception to the FTCA, which limits the government's waiver of sovereign immunity for certain kinds of discretionary conduct, applied both to the

---

[3] The government does not dispute the size of the knife recovered from the scene of the attack, though its exact size is nowhere in the record. Although the government refers to the investigative report for Rich's attack as in the record on page 169 of the joint appendix, we are unable to locate page 169. Nor is the investigative report included in any other part of the record.

prison officials' decision whether to separate Rich from his attackers and to the manner in which the prison officials searched the attacking inmates. To support its position, the government included several exhibits with its motion to dismiss. These attachments included portions of Rich's prison file and declarations from the prison officials, who stated that they performed patdowns and searches properly on all inmates before the attack. The attachments also included various "Post Orders" in effect at USP Hazelton on August 5, 2011.[4]

The Post Orders relating to the SHU require that an inmate's hands be restrained behind his body whenever leaving his cell for recreation. Additionally, the Post Orders state that "inmates will be pat searched and screened with the hand-held metal detector before entering and upon exiting the recreation cages." The Post Orders do not otherwise describe how a patdown should be performed. However, the BOP "Program Statement" applicable to all prisons, including USP Hazelton, provides that "[a]ny pat search shall be conducted as outlined

---

[4] "Post Orders" are specific to each institution, based on BOP policy, and state each post's duty hours as well as any special instructions unique to that post. See U.S. Dep't of Justice Program Statement No. 5500.14, section 103 (2012), http://www.bop.gov/policy/progstat/5500_014.pdf (describing post orders).

in the Correctional Services Manual."[5]  Moreover, according to the Post Orders, when an inmate has a prior history of weapons possession, prison officials must perform a "visual search" of the inmate, including a search of the inmate's body cavities, prior to his entry into a recreation cage.

After reviewing these attachments, the district court agreed with the government that the discretionary function exception applied to the prison officials' decisions regarding inmate separation and the manner in which the prison officials performed the patdowns and searches.[6]  The court found that the Post Orders "do not mandate a specific course of conduct" for the officers to follow in performing the required searches.  The court also concluded that the discretion afforded prison officials is consistent with the public policy of granting prison officials deference in implementing and executing their security measures.

The district court further concluded that Rich was not entitled to any discovery regarding whether additional directives mandated a particular method for performing patdowns

---

[5]  The Correctional Services Manual is not a part of the record before this Court.

[6] The district court noted that Rich only objected to the report and recommendation of the magistrate judge with respect to whether the prison officials performed their searches properly.  Accordingly, the court simply adopted the magistrate judge's conclusion regarding separation.

6

and searches.  Accordingly, the district court granted the government's motion to dismiss for lack of subject matter jurisdiction.  This appeal followed.

## II.

On appeal, Rich challenges the district court's conclusion that the discretionary function exception applies to the prison officials' conduct.  He argues that the officials had a non-discretionary duty to maintain and monitor both his prison files and the files of other inmates.  Rich contends that if the officials had taken these security measures, they would have known about Rich's history with the Aryan Brotherhood and the need to keep him separated from the group's members.  Rich also argues that the Post Orders and other policies imposed mandatory directives that the prison officials search and patdown inmates prior to placing them in the recreation cage, thereby precluding application of the discretionary function exception.  Rich contends that, at a minimum, he should have been allowed the opportunity for discovery before the district court determined that the discretionary function exception applied.

In response, the government contends that the officials' decision not to separate Rich from his attackers, as well as the manner in which the searches were performed, are matters within the discretionary function exception.  The government asserts

7

that there are no directives governing the separation of prisoners or the proper procedure for performing patdowns and searches. The government argues that, therefore, the prison officials' discretion in these areas implicates public policy considerations that justify application of the discretionary function exception. The government further asserts that the district court did not abuse its discretion when it refused to grant Rich discovery, because no additional information could be uncovered that would establish the district court's jurisdiction.

A.

We review a district court's decision dismissing a case for lack of subject matter jurisdiction de novo. Taylor v. Kellogg Brown & Root Servs., Inc., 658 F.3d 402, 408 (4th Cir. 2011). We review a denial of jurisdictional discovery for abuse of discretion. Durden v. United States, 736 F.3d 296, 307 (4th Cir. 2013).

Although the United States typically is immune from suit, the FTCA provides a waiver of this sovereign immunity when the federal government "would be liable to the claimant in accordance with the law of the place where the act or omission occurred" for certain torts, such as negligence, committed by federal employees acting within the scope of their employment. 28 U.S.C. § 1346(b)(1). However, under the FTCA, the

8

discretionary function exception limits that waiver of immunity in situations involving "the exercise or performance or the failure to exercise or perform a discretionary function or duty . . . whether or not the discretion involved be abused." 28 U.S.C. § 2680(a).

To determine whether conduct qualifies for the discretionary function exception, courts apply a two-pronged test. First, a court considers whether the challenged governmental conduct involves an element of judgment or choice. United States v. Gaubert, 499 U.S. 315, 322 (1991). When a statute, regulation, or policy prescribes a specific course of action, there is no discretion and the exception does not apply. Id. Second, if the challenged conduct does involve an element of judgment, the court must then determine whether the judgment was one that the exception was designed to protect, namely, a judgment based on considerations of public policy. Id. at 322-23.

A defendant's assertion that the discretionary function exception applies is an assertion that the court lacks subject matter jurisdiction. See Indem. Ins. Co. of N. Am. v. United States, 569 F.3d 175, 180 (4th Cir. 2009). In challenging subject matter jurisdiction, a defendant may raise a facial challenge that, even if all the alleged facts are true, the

9

complaint nonetheless fails to establish jurisdiction.  See Durden, 736 F.3d at 300.

Alternatively, a defendant may dispute the allegations in a complaint that could establish subject matter jurisdiction. Kerns v. United States, 585 F.3d 187, 192 (4th Cir. 2009).  In that situation, the court may go beyond the allegations in the complaint and "in an evidentiary hearing determine if there are facts to support the jurisdictional allegations."  Id.  Under such circumstances, the complaint's allegations ordinarily are not afforded a presumption of truthfulness.  Id.  If, however, the jurisdictional facts are intertwined with the facts central to the merits of the complaint, "a presumption of truthfulness should attach to the plaintiff's allegations."  Id. at 193. And, most relevant here, the court "should resolve the relevant factual disputes only after appropriate discovery."  In re KBR, Inc., Burn Pit Litig., 744 F.3d 326, 334 (4th Cir. 2014) (citation omitted).

### B.

We first address whether the discretionary function exception applies to the prison officials' placement of Rich in the recreation cage with his attackers, and whether Rich was entitled to discovery on this claim.  To do so, we consider whether the challenged governmental conduct involves an element of judgment or choice and, if so, whether that judgment was

10

based on considerations of public policy. Gaubert, 499 U.S. at 322-23.

The BOP is required to provide for the "protection," "safekeeping," and "care" of "all persons charged with or convicted of offenses against the United States." 18 U.S.C. § 4042(a)(2), (3). Under the statute's broad directives, the BOP retains discretion regarding the implementation of those mandates. Cohen v. United States, 151 F.3d 1338, 1342 (11th Cir. 1998). This discretion is evident in the regulations regarding the proper handling and review of the Central Inmate Monitoring (CIM) files.

The CIM system is the mechanism by which the Bureau of Prisons monitors and controls the transfer, temporary release, and community activities of certain inmates who present special needs for management, including the need to separate certain inmates from others based on their past behavior. See 28 C.F.R. § 524.70-76. Although 28 C.F.R. § 524.72(d) provides that inmates "may require separation from a specific disruptive group [such as a prison gang]" (emphasis added), nothing in this regulation requires that any specific action be taken by the various prison officials. Instead, prison officials must consider several factors and exercise independent judgment in determining whether inmates may require separation. See 28 C.F.R. § 524.72(f). Given this general language in the

11

regulations, we conclude that prison officials exercise broad discretion in this regard and, thus, that the first prong of the discretionary function exception is satisfied.

We turn to consider the second element of the discretionary function exception, namely, whether considerations of public policy are implicated in the discretion given to prison officials in their decisions about the separation of prisoners. See Gaubert, 499 U.S. at 322–23. Although this is an issue of first impression in this Court, other federal appellate courts have held that prisoner placement and the handling of threats posed by inmates against one another are "part and parcel of the inherently policy-laden endeavor of maintaining order and preserving security within our nation's prisons." Cohen, 151 F.3d at 1344; see also Alfrey v. United States, 276 F.3d 557, 563-65 (9th Cir. 2002); Calderon v. United States, 123 F.3d 947, 951 (7th Cir. 1997). Factors such as available resources, proper classification of inmates, and appropriate security levels are "inherently grounded in social, political, and economic policy." Dykstra v. U.S. Bureau of Prisons, 140 F.3d 791, 796 (8th Cir. 1998); cf. Bell v. Wolfish, 441 U.S. 520, 547-48 (1979) ("Prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve

12

internal order and discipline and to maintain institutional security.").

We agree with the reasoning of our sister circuits. Prison officials are afforded discretion in determining where to place inmates and whether to keep certain individuals or gangs separated from one another. Because these decisions invoke several policy considerations for prison administrators, they are precisely the kind of determinations that the discretionary function exception is intended to protect. We therefore hold that the discretionary function exception shields the prison officials from liability with respect to whether they should have separated Rich from his attackers.

We also conclude that Rich is not entitled to discovery on this issue. Even accepting all of Rich's allegations regarding his history with the Aryan Brotherhood as true, the discretionary function exception still would apply to the decisions of the officials regarding prisoner placement, ultimately depriving us of jurisdiction. And because no facts that Rich could uncover in discovery would establish jurisdiction, we hold that the district court did not abuse its discretion in refusing Rich discovery regarding the officials' decision to not separate Rich from his attackers. See Durden, 736 F.3d at 307-08.

13

C.

We reach a different conclusion regarding the availability of discovery with respect to Rich's allegations that the prison officials did not search his attackers properly before placing them in the recreation cage. Unlike the allegations underlying Rich's claim regarding the prison officials' duty to separate Rich from his attackers, which failed on their face to establish subject matter jurisdiction, disputed jurisdictional facts are intertwined with the merits of Rich's claim regarding the execution of the patdowns. See Kerns, 585 F.3d at 193.

For example, in support of the government's motion to dismiss, the prison officials provided declarations that they did in fact perform patdowns of the inmates involved on the date of the incident. Those declarations stand in direct contrast to Rich's allegation that the officials "failed to properly screen, 'wand,' or search inmates entering the SHU and/or SHU recreation cages." That allegation is relevant not only to whether the discretionary function exception applies and, thus, whether we have subject matter jurisdiction over this claim, but also to the merits of Rich's negligence allegation.

We find no merit in the government's argument that Rich did not allege that the prison officials completely failed to patdown or "wand" his attackers, but alleged only that these searches were not done properly. Rich's complaint can be read

14

fairly to allege both that the officials did not perform the searches properly, and that the officials failed to perform the searches in any manner. Rich maintained this position throughout the litigation. A period of discovery would afford Rich the opportunity to challenge these officials' assertions concerning their performance of the searches.

Even if we accept the prison officials' uncontested declarations, the fact that they performed patdowns does not resolve the question whether the officials performed those patdowns properly. The BOP's Program Statement provides that "[a]ny pat search shall be conducted as outlined in the Correctional Services Manual," suggesting the existence of more specific directives. Rich should be permitted the opportunity for discovery of that Correctional Services Manual to determine whether more specific directives exist concerning the performance of patdowns.[7]

---

[7] We do not decide whether, even in the absence of more specific mandates, the manner in which a patdown is performed qualifies for the discretionary function exception. We note, however, that the government offers no limiting principle to its rationale as to when the exception should apply. There is always some level of discretion regarding the performance of even the most specific of mandates, which under the government's argument would mean that the discretionary function exception would always apply. Moreover, the government could only suggest reasons of "security" generally as the policy consideration involved in the manner of performing patdowns.

15

Additionally, when inmates have a prior history of weapons possession, the Post Orders require a "visual search" of those inmates, involving a search of the body cavity, prior to their entry into a recreation cage. Discovery could uncover whether any of Rich's attackers had a history of weapons possession that would have triggered this visual search requirement. Such an additional mandate would affect any analysis concerning whether the prison officials properly performed searches as required.[8]

Finally, we observe that Rich may be able to establish jurisdiction even if, under typical circumstances, the discretionary function exception applies to the manner in which prison officials perform patdowns. The Second Circuit has acknowledged that discretionary conduct cannot be grounded in a policy decision when that conduct is marked by individual carelessness or laziness. See Coulthurst v. United States, 214 F.3d 106 (2d Cir. 2000) (concluding that the discretionary function exception would not apply to a prison official's inspection of faulty weight equipment that caused plaintiff's injuries if that inspection was performed in a "carelessly

---

[8] At oral argument, the government contended that providing certain types of information to inmates, such as camera placements and security methods employed by prison officials, would present serious safety risks by allowing inmates to uncover any potential holes in prison safety procedures. We are confident that the district court can implement appropriate measures during the course of discovery to prevent any unnecessary disclosure of critical security information.

16

inattentive" manner). The fact that a nine-inch-long knife was recovered at the scene of Rich's attack, in spite of the prison officials' averments that each performed the required searches properly, at least suggests the possibility of careless inattention. In that case, the prison officials would not be shielded by the discretionary function exception because no policy considerations would be implicated.

Discovery provides a procedural safeguard when a jurisdictional inquiry would require the consideration of merits-based evidence. See Kerns, 585 F.3d at 193. This safeguard does not disappear simply because the plaintiff is a prisoner. Of course, courts frequently apply the discretionary function exception to prison officials' efforts to ensure the safety of prisoners under difficult circumstances, e.g., Cohen, 151 F.3d at 1344; Alfrey, 276 F.3d at 564-67; Calderon, 123 F.3d at 949-51, and that may be the ultimate outcome here as well. Nevertheless, we conclude that Rich is entitled to the safeguard of discovery before his complaint is dismissed.

Because the jurisdictional facts regarding the propriety of the prison officials' patdowns are intertwined with the merits of Rich's allegations, the district court "should resolve the relevant factual disputes only after appropriate discovery." In re KBR, Inc., 744 F.3d at 334 (citation omitted). Accordingly, we vacate in part, and remand, to allow Rich to proceed to

17

discovery on the issue whether and how the prison officials performed the patdowns and searches, and whether more specific directives existed regarding the manner of performing the patdowns and searches.

## III.

For these reasons, we affirm the district court's decision that the discretionary function exception applies to the prison officials' decision not to separate Rich from his attackers. However, we vacate the district court's judgment with respect to the issue of the prison officials' performance of the patdowns and searches, and remand for additional proceedings consistent with this opinion.

AFFIRMED IN PART,
VACATED IN PART,
AND REMANDED

18