**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 18-7392**

SCOTT TYREE,

       Plaintiff – Appellant,

  v.

UNITED STATES OF AMERICA,

       Defendant – Appellee.

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh. Terrence W. Boyle, Chief District Judge. (5:14-ct-03158-BO)

Argued: May 29, 2020                           Decided: July 1, 2020

Before NIEMEYER, MOTZ, and AGEE, Circuit Judges.

Affirmed in part; vacated in part and remanded with instructions by unpublished per curiam opinion. Judge Motz wrote a separate opinion concurring in part.

**ARGUED:** Jana Minich, Raymond Gans, UNIVERSITY OF VIRGINIA SCHOOL OF LAW, Charlottesville, Virginia, for Appellant. Michael Bredenberg, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee. **ON BRIEF:** James S. Ballenger, Kellye Quirk, Third Year Law Student, Appellate Litigation Clinic, UNIVERSITY OF VIRGINIA SCHOOL OF LAW, Charlottesville, Virginia, for Appellant. Robert J. Higdon, Jr., United States Attorney, Joshua B. Royster, Assistant United States Attorney, Hayley Milczakowski, Qualified Third Year Law Student, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Scott Tyree, an inmate at the Special Housing Unit ("SHU") at the Low Security Correctional Institution in Butner, North Carolina ("LSCI Butner"), filed suit under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346, alleging that he suffered severe injuries because prison officers failed to respond in a timely fashion under Bureau of Prisons ("BOP") policy while he was being attacked by a fellow inmate. The district court found the officers' actions fell within the discretionary function exception to the FTCA and dismissed Tyree's complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). Tyree appeals. For the reasons set out below, we affirm in part and vacate and remand in part.

I.

Tyree's complaint alleges[1] that around 11:15 p.m. on July 19, 2012, his cellmate, Glenn Nickerson, woke him up by turning off his continuous positive airway pressure ("CPAP") medical device and assaulting him. According to Tyree, he yelled for help throughout the assault because he was unable to reach the duress button at the other end of his cell.[2] After about five minutes, Nickerson stopped beating him, pushed the button, and

---

[1] When a defendant mounts a facial challenge to subject matter jurisdiction under Rule 12(b)(1), "the facts alleged in the complaint are taken as true[.]" *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009).

[2] This button, which is designed only for "emergency and/or life-threatening situations, to include health-related issues," J.A. 86, sets off a light at the cell door as well as a visual and audio alarm in the SHU control room. If the alarm is not acknowledged within ninety seconds, it is reported to the LSCI Butner Control Center.

called for a correctional officer. Two minutes later, Nickerson resumed assaulting Tyree by striking him in the head and face with his CPAP device, then dragging him to the front of the cell and hitting Tyree with his fists. The BOP officer who responded to the duress button found Tyree in this position.

After BOP staff intervened, Tyree was taken to an emergency room for treatment for, among other injuries, a laceration above his eye as well as a CT scan to check for skull fractures. According to his complaint, Tyree suffered two grand mal seizures about a year later that he attributes to the assault, given that he had never previously suffered a head trauma or been diagnosed with a seizure disorder. As a result, he must now take anti-seizure medication and receive specialized neurological care.

In June 2013, Tyree filed an administrative tort claim as required by the FTCA. After exhausting his administrative remedies, he filed the instant FTCA suit a year later,[3] claiming that BOP officers failed to respond to the alarm "in excess of ten . . . minutes" and that this delay was the result of "deliberate indifference and negligence" on the part of the officers. J.A. 17. Had they responded in the "time-frame mandated by internal [BOP] policy and procedures," he further asserted, his "injuries would not have been as extensive, or serious[.]" J.A. 17.

The Government filed a motion to dismiss or, in the alternative, for summary judgment. In support, the Government submitted sworn affidavits from the BOP officers who responded to the alarm stating that they reacted "immediately" upon observing the

_____

[3] Throughout litigation up until the instant appeal, Tyree appeared pro se.

4

duress button light at 11:27 p.m.[4] J.A. 24, 27. But Tyree asserted that summary judgment was inappropriate since he had not been afforded the opportunity to conduct discovery, which he argued was vital to his ability to make a case. The district court granted the motion for summary judgment, finding in relevant part that the officers responded as soon as they saw the light and that any contention that they "should have responded faster is merely speculative[.]" J.A. 33. Tyree timely appealed.

On appeal, this Court determined that the district court had abused its discretion by entering summary judgment prior to discovery. Specifically, the Court observed that the parties were in disagreement regarding the timeline of events and whether the emergency alert system was operational. "Accepting Tyree's assertions as true, prison officials did not respond for over five minutes after the emergency light was activated. The record is devoid of information regarding whether this alleged five minute delay was reasonable." *Tyree v. United States*, 642 F. App'x 228, 230 (4th Cir. 2016) (citing *Palay v. United States,* 349 F.3d 418, 432 (7th Cir. 2003) (providing scenarios whereby failure to respond in a timely manner could constitute negligence)). Thus, "discovery on these topics would potentially

---

[4] Specifically, Officer Stephen Seaman stated that on the night in question, he was conducting rounds and was "unaware of any emergency in that cell." J.A. 24. However, at approximately 11:27 p.m., he saw the light outside of Tyree's cell, indicating the button had been activated; in response, he immediately went over to the cell, turned on the cell light, and observed the two inmates holding each other in a headlock. He thereafter called for assistance and, "as responding staff arrived, the inmates were removed from their cell and medically assessed." J.A. 23–24.

Meanwhile, Officer Thomas Ashley stated that he was in the SHU control room taking care of paperwork and other duties when he saw a light go off on the switchboard at approximately 11:27 p.m., indicating that a duress button had been pushed in Tyree's cell. According to his affidavit, he, too, reacted immediately by going to the range and alerting Officer Seaman, who then called for further assistance.

5

have created a genuine issue of material fact sufficient to defeat summary judgment." *Id.* Accordingly, the Court vacated and remanded for further proceedings.

During discovery on remand, Tyree sought information and documents regarding SHU staff duties, the required response time to duress alarms, and alarm response training. The Government provided the titles of certain documents but averred that there were no regulations regarding the response time to a duress alarm. It did, however, provide redacted inspection reports for the alarm system.

Tyree also sought the relevant Post Orders—that is, specific instructions for each particular staff position that describe how that function should be executed. The Government observed that although responsive records existed, security concerns dictated that the documents not be released to Tyree. The district court upheld the Government's objection but required that the Post Orders be provided for *in camera* review, which it conducted.

After certain discovery was conducted and while a number of Tyree's discovery motions were pending, the Government filed a motion to dismiss for lack of subject matter jurisdiction, arguing that Tyree's allegations against the officers implicated a discretionary function—that is, governmental conduct involving an element of judgment or choice that is grounded in policy considerations—such that Tyree could not maintain an FTCA suit based on the BOP officers' alleged conduct. In his response, Tyree averred that the only claim he sought to pursue was that the officers failed to respond to the alarm within the mandatory timeframe set forth by BOP policies and Program Statements—namely, ninety

6

seconds. Given this, Tyree argued, the discretionary function exception to the FTCA was not applicable.

The district court concluded that the exception applied and granted the Government's motion to dismiss. As to the first prong of the discretionary function analysis—which asks whether the alleged government action involves an element of judgment or choice—the court found that although BOP Program Statement § 3420.09(10)[5] required that BOP staff "respond immediately, effectively, and appropriately during all emergency situations," officers had the discretion in the event of an inmate altercation as to *how* to respond "immediately." J.A. 120–21 (internal quotation marks omitted). With respect to the second prong—whether the judgment implicates the kind of policy considerations the discretionary function exception was designed to shield— the court found the officers had the discretion to determine the appropriate time to intervene based upon considerations of inmate and staff safety, as well as other institutional concerns. The district court thus concluded that the officers' response to the alarm was necessarily a policy-based decision and that the discretionary function exception applied.

Meanwhile, before the district court issued its order, Tyree filed additional evidence that LSCI Butner was accredited by the American Correctional Association ("ACA") and that ACA standards required a four-minute response time to medical emergencies. After the district court dismissed his complaint, Tyree filed a Rule 59(e) motion for reconsideration, arguing the court had failed to consider this additional evidence. The court

---

[5] Now BOP Program Statement § 3420.11(6). J.A. 120.

denied the motion, reiterating that the discretionary function exception applied because BOP staff retained the discretion to determine how to respond to an emergency situation.

Tyree timely appealed.[6] This Court has jurisdiction under 28 U.S.C. § 1291.

## II.

On appeal, Tyree contends that he alleged a plausible FTCA claim that: (1) BOP officers violated a mandatory, non-discretionary duty by failing to respond to the duress alarm within a specific timeframe; and (2) even assuming there was no required response time, the BOP officers acted negligently in delaying their response. In reviewing this appeal, we first consider "the proper legal framework for resolving a Rule 12(b)(1) motion

---

[6] Prior to considering the rest of Tyree's arguments, we must first address two points raised in his initial pro se appeal brief, filed before the appointment of counsel. First, in the district court, Tyree filed a motion to strike the Government's reply in support of its motion to dismiss because, according to Tyree, its reply was postmarked four days after the last day for service under the prisoner mailbox rule. *See Houston v. Lack*, 487 U.S. 266, 270 (1988). The court denied the motion, ruling that the Government's reply was timely filed. We agree: the mailbox rule that Tyree seeks to apply governs the determination of when a case is filed "in the substantive sense for statute of limitations purposes" and the timeliness of other prisoner filings. *Jones v. Bertrand*, 171 F.3d 499, 501 (7th Cir. 1999). But the determination of when a case is filed "in the procedural sense for being placed on the court's docket" is governed by the court's general filing rules. *Id.* Given that the court followed established practice in determining the reply's timeliness, its ruling was not an abuse of discretion. *See Marryshow v. Flynn*, 986 F.2d 689, 693 (4th Cir. 1993).

Second, Tyree contended that the district court erred in failing to sanction the Government for being uncooperative during discovery, and that the court erroneously failed to place any findings on the record with regard to its *in camera* review of the Post Orders. But we discern no abuse of discretion in the district court's discovery rulings, *see United States v. Ancient Coin Collectors Guild*, 899 F.3d 295, 323 (4th Cir. 2018), given that the court admonished the Government about any delay, overruled several of its objections, and reviewed the documents *in camera.* We therefore affirm the district court in these respects.

8

to dismiss" in the context of an FTCA claim and then turn to Tyree's two primary contentions. *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). In doing so, we review the district court's decision dismissing the case for lack of subject matter jurisdiction de novo, *Rich v. United States*, 811 F.3d 140, 144 (4th Cir. 2015), while keeping in mind Tyree's pro se status at the time of the filing of the complaint. *Hill v. Braxton*, 277 F.3d 701, 707 (4th Cir. 2002).

A.

Although the United States is typically immune from suit, the FTCA waives this sovereign immunity when the federal government "would be liable to the claimant in accordance with the law of the place where the act or omission occurred" for certain torts, such as negligence, committed by federal employees acting within the scope of their employment. 28 U.S.C. § 1346(b)(1). However, the discretionary function exception to the FTCA limits this waiver. This exception provides that the Government cannot be held liable "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a).

The challenged conduct falls within the scope of this exception if it fulfills a two-pronged test. First, the conduct at issue must involve an element of judgment or choice. When a statute, regulation, or policy prescribes a mandatory course of action, the employee has no rightful option but to adhere to the directive and the exception does not apply. Second, if the challenged conduct does involve an element of judgment or choice, the exercise of such judgment must be grounded in considerations of "social, economic, and

9

political policy." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 814 (1984). The focus of this latter inquiry is not on the employee's subjective intent in exercising the discretion conferred, but on the nature of the actions taken and whether they are susceptible to policy analysis. *United States v. Gaubert*, 499 U.S. 315, 322–23 (1991). Only if both prongs are met is the challenged conduct shielded by the exception.

As a result, the Government's argument that the discretionary function exception applies is an assertion that the court lacks subject matter jurisdiction. *See Indem. Ins. Co. of N. Am. v. United States*, 569 F.3d 175, 180 (4th Cir. 2009). And in challenging subject matter jurisdiction, a defendant may present one of two types of challenges. A defendant may raise a facial challenge arguing that even if all the alleged facts are true, the complaint nonetheless fails to establish jurisdiction. *See Adams v. Bain,* 697 F.2d 1213, 1219 (4th Cir. 1982). In such instances, the facts alleged in the complaint are taken as true and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction. In the alternative, a defendant can mount a factual challenge, contending "that the jurisdictional allegations of the complaint [are] not true." *Id.* In such instances, the presumption of truthfulness normally accorded to a complaint's allegations does not apply, and the district court is entitled to decide disputed issues of fact in order to determine if subject matter jurisdiction exists. *Id.*

Either way, courts should be mindful that "where the jurisdictional facts are intertwined with the facts central to the merits of the dispute, a presumption of truthfulness should attach to the plaintiff's allegations." *Kerns*, 585 F.3d at 193 (internal quotation

10

marks omitted). "In that situation, the defendant has challenged not only the court's jurisdiction but also the existence of the plaintiff's cause of action. A trial court should then afford the plaintiff the procedural safeguards—such as discovery—that would apply were the plaintiff facing a direct attack on the merits." *Id.* As the Supreme Court has elaborated, a trial court should dismiss under Rule 12(b)(1) only when the jurisdictional allegations are "clearly . . . immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous." *Bell v. Hood,* 327 U.S. 678, 682 (1946).

In this case, it appears the Government makes the first type of challenge, contending that Tyree's complaint fails on its face to allege facts that, even if assumed true, could establish subject matter jurisdiction. *See* J.A. 58 (observing that even if BOP staff "responded too slowly to the assault," "this type of decision" would be protected by the discretionary function exception). Therefore, we must "assume the truthfulness of the facts alleged." *Kerns*, 585 F.3d at 193.

B.

1.

With this legal framework in mind, we turn now to the district court's dismissal of Tyree's claims for lack of subject matter jurisdiction. In reviewing his complaint, the district court concluded that the challenged conduct—the allegedly delayed response by BOP officers to the duress alarm—could not form the basis for FTCA liability because it was shielded by the discretionary function exception. And in finding that both prongs of the exception had been met, the court concluded that the challenged conduct was predicated

11

on emergency response procedures that involved: (1) "an element of judgment or choice" (or were inapplicable to Tyree's situation), J.A. 119, as well as (2) policy considerations to "determine the appropriate time to intervene" (including "consideration[s] of inmate and staff safety, the size of the correctional facility, and any other incidents or events occurring at the facility"). J.A. 122. At bottom, the court read the complaint as alleging delay arising out of the exercise of discretionary functions—which, given the exception, could not give rise to FTCA liability. However, because the complaint can also fairly be read as alleging delay arising out of inattention or carelessness, we conclude that the district court erred in dismissing the complaint without further development of the jurisdictional facts.

2.

As an initial matter, we agree with the district court's conclusion with respect to the first prong that the BOP policies Tyree cites either: (1) do not set forth a mandated, non-discretionary response such that they meet the first prong of the discretionary function exception or (2) are inapplicable to his situation.

For instance, Tyree argues that BOP Program Statement § 3420.09(10)—which provides that "it is mandatory that employees respond immediately, effectively, and appropriately during all emergency situations"—imparts a non-discretionary duty on BOP staff. J.A. 120. But the Statement neither defines what constitutes an "immediate[]" response, nor does it provide any additional guidance, thus retaining some element of judgment or choice in its execution. This is in contrast to other BOP directives that do not provide any room for such judgment, such as BOP Program Statement § 6031.04, which sets forth a "four-minute response to life- or limb-threatening medical emergencies." J.A.

12

92, 119–20. While § 6031.04 removes any discretion as to when to respond—requiring a response within four minutes—§ 3420.09(10) does not. Rather, it leaves a discretionary judgment as to what constitutes an "immediate[], effective[], and appropriate[]" response in a particular circumstance. Given this, the district court correctly concluded that BOP staff retained an element of judgment or choice as to the implementation of § 3420.09(10), satisfying the first prong of the discretionary function exception.[7]

Tyree also points to BOP Program Statement § 6031.04—which, as noted above, provides that ACA Standards "require a four-minute response to life- or limb-threatening medical emergencies," J.A. 92, 119–20—as setting out a mandatory, non-discretionary response timeframe. We agree, but because this Program Statement applies only to medical emergencies, and Tyree was not declaring a medical emergency at the time the button was activated, this Statement is inapplicable in his case.[8] In sum, we affirm the district court's conclusions that the BOP and ACA standards did not impose a mandatory duty on the BOP officers to respond within a particular timeframe, thereby fulfilling the first prong of the discretionary function analysis.

3.

---

[7] We also agree with the district court's finding that the Post Orders—which we have reviewed—do not show mandated, non-discretionary responses to an emergency alert. We therefore affirm the district court's conclusions in this respect.

[8] Further, although it is not entirely clear from the face of the Program Statement, the standard appears to apply to medical professionals at LSCI, not the BOP correctional officers whose actions Tyree challenges. In turn, Tyree never alleged that medical staff violated the four-minute directive.

13

But this does not end our inquiry, given that Tyree's complaint "is susceptible to various readings." *Coulthurst v. United States*, 214 F.3d 106, 109 (2d Cir. 2000). And we are mindful of these possible readings given Tyree's pro se status at the time of the drafting of his complaint and through the following proceedings until the instant appeal. After all, "the long-standing practice is to construe pro se pleadings liberally" given that a "pro se prisoner"—in contrast to a "seasoned . . . practitioner"—"is generally less able to anticipate" issues that may result in the dismissal of his complaint. *Hill*, 277 F.3d at 707. Consequently, we have consistently noted that "a complaint, especially a pro se complaint, should not be dismissed summarily unless 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief[.]'" *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978) (quoting *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (per curiam)).

Here, we conclude that at least one of two readings of Tyree's complaint may give rise to a set of facts that fails to satisfy the second prong of the discretionary function exception. As noted, this prong asks whether the exercise of judgment was grounded in considerations of "social, economic, and political policy." *Varig Airlines*, 467 U.S. at 814. And in this case—assuming the officers delayed in responding to the alarm—ascertaining which set of facts occurred will determine whether the discretionary function exception has been fulfilled.

On the one hand, the alleged delay may have been, as the district court concluded, the result of legitimate policy considerations, such as accounting for other ongoing inmate issues. In such an instance, the exercise of judgment would be of the type the discretionary

14

function exception was designed to protect—that is, those decisions "grounded in . . . social, economic, or political goals[.]" *Gaubert*, 499 U.S. at 323. And if that were the case, the second prong of the discretionary function exception would be fulfilled and the Government shielded from suit by the exception.

On the other hand, "the complaint's allegations of negligence" in the failure to respond promptly "might also refer to a very different type of negligence." *Coulthurst*, 214 F.3d at 109. "Perhaps the corrections officer[s]" on duty at the time were "simply asleep" or "left the unit unattended in order to enjoy a cigarette or a snack." *Palay*, 349 F.3d at 432. "In that case," this Court has previously concluded, "the prison officials would not be shielded by the discretionary function exception because no policy considerations would be implicated." *Rich*, 811 F.3d at 147. Rather, such conduct would be "marked by individual carelessness or laziness," *id.* (citing *Coulthurst*, 214 F.3d at 106), thereby failing to fulfill the second prong of the discretionary function exception. *See also Palay*, 349 F.3d at 432 (observing "[t]hat type of carelessness would not be covered by the discretionary function exception, as it involves no element of choice or judgment grounded in public policy considerations" and would therefore fail to fulfill the second prong of the exception); *Coulthurst*, 214 F.3d at 109 ("Such negligent acts neither involve an element of judgment or choice within the meaning of *Gaubert* nor are grounded in considerations of governmental policy."). Thus, we concluded in *Rich* that an injured prisoner alleging that BOP officials failed to search his attackers properly before placing them in a recreation area together was entitled to jurisdictional discovery in part because it was "possibl[e]"

based on his complaint that the complained-of injury resulted from the officials' "careless inattention" during the performance of pat-downs. 811 F.3d at 147.

Here, "with nothing more" than Tyree's complaint and very limited discovery to go on, it is unclear whether the officers who responded to the duress alarm were properly exercising discretion grounded in policy considerations. *Palay*, 349 F.3d at 429, 432 (noting that "being at the pleading stage of the case, there is much we do not know about the circumstances that led to [the] injury"). Either way, "the complaint is susceptible to various readings," *Coulthurst*, 214 F.3d at 109, and the foregoing possibilities are fairly asserted by the complaint's allegation that the officers' response was the result of "deliberate indifference and negligence." J.A. 17. That is, the complaint is broad enough to assert both the types of negligence that are covered by the exception and those that could fall outside of it. Because at this stage of the proceedings a liberally construed pro se complaint is susceptible to different readings, the district court erred in assuming that the complaint involved only discretionary functions.[9]

At bottom, "we cannot say that *no* set of facts consistent with [his] complaint would entitle him to relief, and we must be able to say that before dismissing [his] claims." *Palay*, 349 F.3d at 432; *see also Rich*, 811 F.3d at 147–48 (observing that prisoner was "entitled

---

[9] If further discovery supports the claim that the delayed response was the result of "individual carelessness or laziness," we note that Tyree may be able to establish jurisdiction even if the discretionary function exception would typically apply to the manner in which BOP officers respond to duress alarms. *Rich*, 811 F.3d at 147 (noting that a plaintiff "may be able to establish jurisdiction" if it is possible that "careless inattention" resulted in the complained-of injury); *see also Coulthurst*, 214 F.3d at 111 ("If the plaintiff can establish that negligence [stemming from absent-mindedness or laziness] occurred, his claims are not barred by the [discretionary function exception.]")

to the safeguard of discovery before his complaint is dismissed"). Thus, "[i]t remains for his claims to be fleshed out with evidence before the court can say whether the discretionary function exception applies." *Palay*, 349 F.3d at 432. And given that there are undeveloped and disputed jurisdictional facts that are "intertwined with the merits of [Tyree's] allegations, the district court should resolve the relevant factual disputes only after appropriate discovery." *Rich*, 811 F.3d at 148 (internal quotation marks omitted). We therefore find that Tyree is entitled to remand for focused discovery as to those facts.

In particular, we observe that two central facts implicating both jurisdiction and the merits of Tyree's claim remain unclear. First, it remains unknown whether the officers' response was in fact delayed (or whether, as they averred, they responded immediately). For example, in support of the Government's summary judgment motion, the BOP officers provided sworn affidavits stating that they in fact immediately responded to the duress button. But those declarations stand in conflict with Tyree's allegation that the officers delayed in their response in excess of ten minutes. That allegation is relevant not only to whether the discretionary function exception applies and whether there is subject matter jurisdiction over this claim, but also to the merits of Tyree's negligence allegation. And where "a jurisdictional inquiry would require the consideration of merits-based evidence," "[d]iscovery provides a procedural safeguard" prior to the dismissal of a complaint. *Rich*, 811 F.3d at 146–47 (observing that discovery was warranted to resolve a similar conflict between the prisoner's allegations and the prison officials' declarations implicating both subject matter jurisdiction and the merits). In any event, properly focused discovery on remand would afford Tyree the opportunity to challenge the BOP officers' statements

concerning their immediate response, including through depositions of Nickerson, the officers themselves, as well as their supervisors and other personnel who may have had direct knowledge of the situation in Tyree's cellblock. *See id.* at 146 ("A period of discovery would afford [the plaintiff] the opportunity to challenge these officials' assertions concerning their performance [of certain BOP duties].").

Second, if there indeed was a delay, the basis of that delay is unknown at this time. And if a BOP policy concerning responses to emergency situations contains an implicit reservation of discretion to delay response because of other prison priorities, that reservation would apply only when the delay was actually attributable to those prison priorities. But here, accepting Tyree's allegations as true, the officers did not exercise their judgment as to which of a range of possible courses of action was the wisest; instead, the officers simply delayed responding out of "deliberate indifference and negligence." J.A. 17. Either way, some discovery will assist the court in ascertaining whether any delay was in fact the result of individual carelessness or inattention.

Finally, we note that this remand for discovery "does not necessarily mean that [Tyree] is entitled to trial on the basis of an ambiguous complaint." *Coulthurst*, 214 F.3d at 111. "[C]ourts frequently apply the discretionary function exception to prison officials' efforts to ensure the safety of prisoners . . . and that may be the ultimate outcome here as well." *Rich*, 811 F.3d at 147. For instance, after limited and focused discovery into these jurisdictional facts, "[t]he [G]overnment may compel [Tyree], by interrogatories or otherwise, to declare what is the negligent conduct he alleges occurred and to reveal whatever evidence he relies on to show such negligence." *Coulthurst*, 214 F.3d at 111.

And if he is "unable to offer sufficient evidence to establish a triable issue of fact on any theory of negligence outside the scope of [the discretionary function exception,] then the United States will be entitled to judgment." *Id.*

## III.

For the reasons set forth above, we affirm the district court's conclusion that BOP Program Statement § 3420.09(10) fails to mandate a non-discretionary response to the duress alarm. However, we vacate the remainder of the district court's judgment and remand for additional proceedings—including limited and focused discovery into the jurisdictional facts set out above—consistent with this opinion.

*AFFIRMED IN PART;*
*VACATED IN PART AND*
*REMANDED WITH INSTRUCTIONS*

DIANA GRIBBON MOTZ, Circuit Judge, concurring in part:

I concur in the majority opinion, except for the conclusion that no Bureau of Prisons ("BOP") policy removes discretion from the BOP officers. As we have recently explained, "unduly generous interpretations of the [Federal Tort Claims Act] exceptions run the risk of defeating the central purpose of the statute, which waives the Government's immunity from suit in sweeping language." *Sanders v. United States*, 937 F.3d 316, 327 (4th Cir. 2019) (quoting *Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 492 (2006)). The majority's interpretation enhances this risk because it finds discretion even though the BOP created a mandatory duty in its employees.

BOP Program Statement § 3420.09(10) recognizes that "failure to respond to an emergency may jeopardize the security of the institution, as well as the lives of staff or inmates." Accordingly, it mandates that prison employees "respond immediately" to all emergency situations. *Id.* If an employee fails to comply, that employee could be fired, "even if that emergency turned out to be a false alarm." *Id.* at Attachment A ¶ 3.

The directive that it is "mandatory" to respond "immediately" removes discretion from employees in determining how quickly to respond to an emergency. Although the word "immediately" does not require action within a set number of minutes, it does require a precise response — action "without interval of time." *See Immediately*, Merriam-Webster, https://www.merriam-webster.com/dictionary/immediately (last visited June 26, 2020). Accordingly, as our sister circuits have found, a policy requiring "immediate[]" action leaves officers no discretion in choosing when to act. *See Hurst v. United States*, 882 F.2d 306, 309–10 (8th Cir. 1989) (holding that requirement to "immediately" act

20

creates nondiscretionary duty as to when to act); *Garza v. United States*, 161 F. App'x 341, 346 (5th Cir. 2005) (finding duty to report abnormal behavior "immediately" falls outside the discretionary function exception).

In sum, the BOP Program Statement removes discretion from employees in deciding whether to disregard or delay responding to an emergency, and so places this case outside the discretionary function exception. For this reason, I would vacate the entirety of the judgment of the district court.